## WILLIAM BRYAN

v.

## CITY OF EAST ST. LOUIS ET AL.

1. PRACTICE.—Where a cause is tried on its merits in the court below it is too late to urge in an appellate court that there was an adequate remedy at law and that the court of chancery had no jurisdiction of the suit.

2. PRACTICE—WHEN INJUNCTION IS A PROPER REMEDY.—Injunction is a proper remedy where cities or public officers under color or power or claim of right, are illegally attempting to injure or take property or impair the rights of the citizen. *Held*, where defendants in error not only interrupted the possession of plaintiff in error, but were about to inflict a permanent and continuing injury by the construction of a public sidewalk upon and across his lot, injunction was the proper remedy.

3. PUBLIC USER, HOW ACQUIRED.—The public can not acquire a prescriptive right to pass over a tract of land generally, but such right must be confined to a specific line or way ; nor can the time during which various and distinct lines of travel have been used, be so united as to make up the requisite time to establish such right to a given single line of road.

4. THE SAME.—Where the possession of a Plank Road Company from 1851 to 1879 was not in open hostility to the title of the owner, but admitted the existence of a higher title and was subservient to it, and prior to the occupation by the Plank Road Company, no public highway through the lot in question was legally established, by prescription or otherwise, and the possession by the company was not connected with any prior user by the public, and was not in privity therewith, and excluding the time the lot was occupied by the plank road, the user by the public was not sufficient to establish a presumptive dedication. · *Held*, that the owner was not deprived of his property in the lot, and that the public had no lawful easement in or highway over the same. (The case distinguished from Craig v. The People, 47 Ill. 487.)

5. ADVERSE POSSESSION.—The doctrine of adverse possession is to be taken strictly, and not to be made out by inference but by clear and positive proof. Every presumption is in favor of considering a possession as in subordination to the title of the true owner. To constitute an adverse possession, it must be hostile in its inception; and where there was no evidence that the company claimed the entire title, it must be presumed that its possession was that of a mere easement in subordination to the higher title of the owner in fee.

ERROR to the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding. Opinion filed April 13, 1883.

Mr. F. A. McCONAUGHY and Messrs. WILDERMAN & HAMILL, for plaintiff in error; cited Laws of 1849, p. 140, §§ 8, 11, 21, 31; Peoria v. Johnston, 56 Ill. 45; Smith v. Bangs, 15 Ill. 402.

Unless the possession of the Plank Road Co. was adverse to the claim of plaintiff in error, his possession of the remainder was possession of the whole: Davies v. Easely, 13 Ill. 192; Ambrose v. Raley, 58 Ill. 506.

As a general rule, to constitute a valid and effectual adverse possession, the possession must be under a claim of the entire title: Tyler on Ejectment and Adverse Possession, 883; Smith v. Burtis, 9 Johns. 180; Jackson v. Johnson, 5 Cow. 74; Jackson v. Sharp, 9 Johns. 163.

The burden of proof of a superior legal title or right to the possession was upon defendants in error: Brooks v. Bruyn, 18 Ill. 539.

Title by prescription, if claimed to have accrued by the possession of successive claimants, depends upon privity between the claimants : Melvin v. Locks and Canals, 5 Met. 32; Miller v. Garlock, 8 Barb. 153; 3 Kent, 552.

No title could accrue by the travel across Illinois City prior to the plank road, as it was neither confined to a particular line, nor under claim of right, nor of sufficient length of time: Gentleman v. Soule, 32 Ill. 271; Dempsey v. Donnelly, 58 Ill. 40; Grube v. Nichols, 36 Ill. 92; Warren v. Jacksonville, 15 Ill. 236; Goddard on Easements, 72; Washburn on Easements, 160; Rowland v. Wolf, 19 Am. Dec. 651; Kyle v. Logan, 87 Ill. 64.

As to the history of Illinois City: Laws of 1819, p. 122, § 2; 6 U. S. Stat. at Large, 242; 3 Private Laws, 1867, p. 621; Lavalle v. Strobel, 89 Ill. 370.

In this State the fee of the streets of a city is in the city : The People v. Walsh, 96 Ill. 232; C. & V. R. R. Co. v. The People, 92 Ill. 170.

That a court of equity has no jurisdiction because there is a complete remedy at law, can not be urged for the first time in this court after a trial on the merits in the court below : Dodge v. Wright, 48 Ill. 382; Stout v. Cook, 41 Ill. 447;

Magee v. Magee, 51 Ill. 500; Ohling v. Luitjens, 32 Ill. 23.

A court of equity has jurisdiction to interpose by injunction, where public officers, under claim of right, are proceeding illegally to impair the rights or injure the property of individuals : Carter v. Chicago, 57 Ill. 283; Smith v. Bangs, 15 Ill. 400; Sherlock v. Winnetka, 59 Ill. 389; Peoria v. Johnson, 56 Ill. 52; High on Injunctions, §§ 1247-71-75; Dillon on Municipal Corporations, § 917; Frizell v. Rogers, 82 Ill. 109 ; Green v. Green, 34 Ill. 320.

The claim to a street over Bryant's lot by user, can not be sustained, as the legal claim of right of travel will be referred to the legal claim to the street : Manrose v. Parker, 90 Ill. 581; Lull v. Chicago, 68 Ill. 518; Waugh v. Leech, 28 Ill. 488.

Mr. G. A. KOERNER, for defendants in error; that if a decree was rendered according to this bill, it would restore complainant and oust defendant, and this is not the province of a writ of injunction as it is a preventive remedy only, cited Wangelin v. Goe, 50 Ill. 459; Fisher v. Board of Trade, 80 Ill. 85; Baxter v. Board of Trade, 83 Ill. 146; Menard v. Hood, 68 Ill. 121.

An injunction will not lie to restrain the commission of a mere trespass, when it is not clear that irreparable damage will result : Hamilton v. Stewart, 59 Ill. 330; Goodell v. Lassen, 69 Ill. 145.

The plank road was as much dedicated to the public use as it could have been done by a deed of dedication, by the act of constructing it and opening it for use : Craig v. The People, 47 Ill. 495.

BAKER, P. J.   This was a bill for an injunction filed by William Bryan against the City of East St. Louis and Maurice Joyce, its Mayor.   The cause was heard on bill, answer, replication and proofs, and the court found the issues for the defendants, and dismissed the bill.

The bill states complainant has been since 1871 the owner in fee, under a deed, of lots 79 and 80, block 36 of the town of

Illinois City, and in the actual occupation of the same (except that part of lot 79 occupied by the plank road of the Collinsville Plank Road Company) as a homestead, and has during that time claimed and paid the taxes on the whole of both of the lots. It further states that in 1850 the Collinsville Plank Road Company, organized under the general plank road law of 1849, and constructed its plank road upon and diagonally across lot 79; that the act of Feb. 21, 1867 (Private Laws 1867, Vol. 2, p. 803), provided that the western terminus of said plank road should be what then was or thereafter might be made the eastern boundary of the city of East St. Louis; that in 1876, Illinois City became a part of the city of East St. Louis, whereby the right of the company to maintain its plank road in Illinois City became extinguished; and that the company in 1879 wholly abandoned said lot, and that its charter rights expired by limitation in February, 1880. The bill further states that complainant upon such abandonment extended his fences in October, 1879, so as to include the ground that had been occupied by the plank road with the remainder of his homestead on said lots 79 and 80, and was in peaceable and quiet possession of the same until March 12, 1881, when the city of East St. Louis, Joyce, and others in their employment tore down the fence under the pretense the land in question was a public street, and have since prevented him, by force, from rebuilding his fence, and that the city has caused lumber to be deposited upon the ground, which is now there, for the avowed purpose of constructing therewith across lot 79, along the site of the abandoned plank road, a public sidewalk, and that the city and said Joyce threaten to build said sidewalk immediately. And the bill also avers that there has been no attempt by any one to condemn any part of said lot for public purposes.

The answer of defendants admits the acts charged, and the intention to construct the sidewalk; but denies the ownership of Bryan, and claims there is a public highway over said lot 79, which has been used as such continuously for more than forty years, and that it is now a street in the city of East St. Louis.

It is urged by defendants in error the court of chancery had no jurisdiction in this suit, because there was a complete remedy at law; because an injunction will not lie to restrain the commission of a mere trespass, and because the bill showed that what it wanted to enjoin had already been accomplished.

The cause was tried on its merits in the court below, without demurrer or objections and it is too late now to say there was an adequate remedy at law: Stout v. Cook, 41 Ill. 447; Dodge v. Wright, 48 Id. 382. It is expressly held injunction is a proper remedy where cities or public officers under color of power or claim of right, are illegally attempting to injure or take the property, or impair the rights of the citizen: Smith v. Bangs, 15 Ill. 402; City of Peoria v. Johnson, 56 Id. 45; Carter v. City of Chicago, 57 Id. 283. And it clearly appears, both from bill and answer, defendants not only had interrupted the possession of plaintiff in error, but were about to inflict a permanent and continuing injury by the construction of a public sidewalk upon and across his lot. The objection here interposed to the jurisdiction of the court of equity is not well taken.

The important question at issue between the parties to this cause is with regard to the existence or non-existence of a public highway over lot 79. There is no claim such highway was ever established otherwise than by *user*. Excluding the time the land was occupied by the plank road company, it is manifest the user by the public did not continue twenty years, the length of time requisite to establish a presumptive dedication. As we understand the proofs in the case, they show the user, prior to 1851 was not confined to any particular or specific line of travel, but, the lands there lying open and unenclosed, and being for the most part prairie with here and there thickets and sloughs, it shifted with the varying circumstances of the seasons and years, from place to place. Even conceding that what was then known as the National Road passed over the site of the platted town of Illinois City, and that during the fourteen years preceding the building of the plank road, there was travel thereon by the public, and

that the different lines of travel shown by the testimony were mere deviations from the original track to avoid obstructions, and that the plank road in places followed the line of this original track; yet it very clearly appears it did not follow that line or any theretofore used line through the whole town plat, but was constructed in part through briar and crab-apple thickets. Indeed, it is a matter of very great uncertainty whether either the supposed original line, or any used or deviating line of the National Road passed over lot 79, or even over block 36; much less is the fact established there was any line of travel prior to 1851 diagonally through said lot co-incident with the line upon which the plank road was placed. The public can not acquire a prescriptive right to pass over a tract of land generally, but such right must be confined to a specific line or way. Nor can the time during which various and distinct lines of travel have been used, be so united as to make up the requisite time to establish such right to a given single line of road. Moreover, it does not appear the proper public authorities ever, during the time of the alleged user, recognized or claimed as a public highway, any road across or through this lot or block, or made any repairs or did any work thereon, or indicated in any way the acceptance of an easement therein.

We are of opinion defendants can take nothing by reason of the occupation of the *locus in quo* from 1851 to 1879 by the Collinsville Plank Road Company. The possession of that company was not in open hostility to the true title, but must be regarded as admitting the existence of a higher title, and as subservient thereto; it must be construed as being an occupancy for a specific purpose, a right of way for its plank road. Had that corporation got possession by virtue of an order of the county court, the conclusion of law would be otherwise. But there is no evidence to show privity between the plank road company and the public that the corporation by reason of an arrangement with the proper public authorities, obtained possession. This being so, then this other principle has application also; that possession of several successive claimants wholly unconnected with each other does not constitute a title by prescription.

Great reliance is placed by defendants in error upon Craig
v. The People, 47 Ill. 487. The decision in that case does
not control the case now before us. It was there held the
plank road was a public highway; and the court said it was
"constructed for the convenience of the public, for a public
purpose, and we are inclined to hold, when such a road is
made, and has for a series of years been used by the public
as a thoroughfare, the corporation have no right, by acts of
their own, to deprive the public of the use of any part of it,
the more especially if it has been constructed on the route of
a public road, using such road, or any part of it, for its
roadway and superstructure. Certainly not, if by the con-
struction of the plank road the travel has, by being turned
onto the plank road, caused the public highway to fall into
disuse, and to such a degree as to occasion the occlusion of
it by the owners of the land over which it ran." The case
differs from the one at bar in many respects; there the ques-
tion as to the status of the plank road, as to its being a pub-
lic highway or otherwise, arose before the expiration of the
time limited by the charter of the plank road company; there
was also privity between that company and the public author-
ities, by virtue of an order of the county court, authorizing
the use of a portion of the land upon which the plank road
was constructed; and the plank road had been located in part
upon what was already a legally established public highway.
The essential point of difference, however, is this: that there
the controversy was between the plank road company, or
those who succeeded to its franchises and duties, and the pub-
lic to which those duties were due; while here the contro-
versy is between a citizen whom it is sought to divest of a
property right, and a municipal corporation which claims to
have acquired a right to maintain a public highway over the
land of that citizen. In Craig's case, the corporation in
consideration of the franchises granted it by the State, con-
structed its road and dedicated it, subject to the payment of
lawful tolls, to the use of the public as a highway, and volun-
tarily assumed the burden of keeping it open and in repair.
But, in this case, what has occurred to deprive Bryan of his

property? What legal right has the city or the public to a street over and across his land? In what way and by what means has the public lawfully obtained an easement in, or a highway over his lot?

By the provisions of the act under which the Collinsville Plank Road Company was organized, it might acquire by purchase or gift, either the lands or the right of way over lands necessary for the construction of its proposed road, and it might also institute certain condemnation proceedings provided for in said act, and "enter upon the lands in respect to which an assessment of damages had been made, and take and hold the same so long as it should be used for the purposes of such a road as such company was formed to construct." It affirmatively appears in the record the company procured leases for some of the lots in the town from the owners, but it is not disclosed which lots these were.

It is a settled rule of law that the doctrine of adverse possession is to be taken strictly, and not to be made out by inference, but by clear and positive proof; and that every presumption is in favor of considering a possession as in subordination to the title of the true owner. To constitute an adverse possession, it must be hostile in its inception. The proofs in this case do not disclose the origin of the possession of the plank road company, whether it was through a deed to the land it occupied on lot 79, or a deed or lease to the right of way for a term of years, or through judicial proceedings under the general plank road law, or otherwise. And there is no evidence the company claimed the entire title. The presumption then must be its possession was that of a mere easement in subordination to the higher title of the owner in fee. As we have already seen, there was, prior to the occupation by the plank road company, no public highway through said lot legally established by prescription or otherwise; and the possession by that company is not connected with any prior user by the public and is not in privity therewith.

Suppose the fact to be the company took from the grantor of plaintiff in error a lease for the term of thirty years, the period of its corporate existence, of that part of lot 79 occu-

pied by its road, it would hardly be contended, in such state of the case, that because plank roads are public highways and because plaintiff's premises had been used as a public highway for more than twenty years, therefore plaintiff was estopped, at the expiration of the thirty years, and upon the abandonment of the premises by the company to claim his land as against the public. The case we have supposed is the case the law will presume upon the facts developed in this record.

The act of February 21, 1867, provides that the western terminus of the Collinsville plank road should thereafter be "what is now or hereafter may by law be made the eastern limits of the city of East St. Louis "; and in 1876, the town of Illinois City was incorporated with and became a part of East St. Louis. We think the effect was, forthwith, to vacate, as a public highway, that portion of the plank road lying within the extended limits of the City of East St. Louis, and remit travel to the ample facilities afforded by the platted public streets of what had been the town of Illinois City; and that the premises in question reverted to the owner of the fee.

Defendants alleged the existence of a public highway over lot 79 as a justification of their interference with the possession of complainant, and of their proposed construction of a sidewalk through the lot. It devolved then upon them to establish there was such public highway. In this we think they have failed.

In our opinion the circuit court erred in finding the issues against complainant, and in dismissing his bill, and in not entering a decree awarding a perpetual injunction in accordance with the prayer and scope of the bill.

The decree is reversed and the cause remanded.

Reversed and remanded.