John C. O'Connell et al.

v.

The Chicago Terminal Transfer Railroad Co. et al.

Opinion filed February 19, 1900.

1. HIGHWAYS—*mere travel does not establish highway by prescription over unenclosed lands.* There must be something more than mere travel by the public over unenclosed lands in order to establish a highway by prescription, since such use is presumed to be permissive and not adverse.

2. SAME—*what will not charge owner with notice that user is under claim of right.* The owner of unenclosed lands is not chargeable with notice that public travel thereover is under claim of right, where the line of travel is tortuous and shifting, and there is nothing done, by way of permanent improvements or otherwise, to indicate the existence of such claim.

3. SAME—*travel by individuals for particular purposes is not public user.* Travel over unenclosed lands by a few individuals for particular purposes does not constitute such use by the public as creates a title to a highway by prescription.

4. SAME—*what will not sustain finding that highway was laid out.* A finding that a highway was laid out cannot be sustained where no record of the commissioners' action is produced or its absence satisfactorily accounted for, and the parol testimony relied upon fails to show a compliance with the statute prescribing the jurisdictional steps to be taken in laying out a highway.

5. PRIVITY—*when person is in privity with party to suit.* Every person is privy to a judgment or decree who succeeds, after the bringing of the suit, to any estate or interest held by one who was a party to such judgment or decree.

6. SAME—*when a party claiming under village ordinance is bound by previous decree against village.* One claiming under a village ordinance the right to construct a steam railroad across a highway alleged to exist over three lots is privy to a prior decree against the village establishing the non-existence of such highway across two of the lots, and the record of that suit is admissible in a proceeding by the owner of the third lot to enjoin the construction of the railroad upon the ground that no highway existed thereon, even though the complainant was not a party to the original suit.

7. INJUNCTION—*abutting owner may enjoin construction of steam railroad in public highway.* An abutting owner whose interest in the fee of a public highway has not been condemned or otherwise obtained may enjoin the construction and operation of a steam railroad in such highway, though the company is acting under an ordinance.

8. SAME—*when injunction is the proper remedy.*  Injunction is the proper remedy where cities or villages or public officials, under color or claim of right, are illegally attempting to take the property of a citizen.

APPEAL from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

This is a bill, filed on April 10, 1899, by John C. O'Connell for himself and by Susan O'Connell, Mary Elizabeth O'Connell, and John Charles O'Connell as trustees under the will of John C. O'Connell, deceased, against Chicago Terminal Transfer Railroad Company, Lyons and Chicago Railroad Company, Chicago Crushed Stone Company, Dolese Bros. Company, John Dolese, Jr., Henry Dolese, Peter Dolese, William Dolese, Edward Doud, and village of Summit, alleging that John C. O'Connell is the owner of an undivided one-third and said trustees are the owners of an undivided two-thirds of lot 5 in the subdivision of the south-east quarter of section 11, township 38, north, range 12, east of the third principal meridian, containing ten acres, and that complainants are in possession, and praying that the defendants may be perpetually enjoined from further prosecuting the work of constructing a road-bed across said premises, or from doing any further work thereon, or from hauling any railroad material thereon, or from further entering upon said premises, or committing any further damages thereto, and for such other relief as may be proper.

The original bill alleges, that large deposits of limestone lie under the surface of said land; that the same is of great value; that there are lime-kilns thereon, which have been used from time to time; that no road or highway has ever been laid out across said land; that no part thereof has ever been dedicated or used by the public long enough to establish a public right; that said premises are, and have always been, unenclosed, and are an open commons; that the village of Summit never insti-

tuted any condemnation or other proceedings to establish a road across the same; that said lot 5 is in the village of Summit; that the said village claims that a highway extends diagonally across said lot, and has caused the same to be surveyed, and has passed an ordinance directing the improvement thereof; that the said trustees assert their right to lay out such highway, and their intention to do so; that the Chicago Terminal Transfer Railroad Company, the Lyons and Chicago Railroad Company, and the Crushed Stone Company operate railroad tracks across the west end of said lot with permission of complainants; that the Dolese Bros. Company, and John, Henry, William, and Peter Dolese, and Edward Doud claim some interest in certain quarry land lying south of lot 5, and, in conjunction with said railroad companies and said stone company, have applied to the trustees of said village for an ordinance, granting permission to them to enter upon said lot 5, and build and maintain railroad tracks from a point south of said lot 5 over, upon, and across the same, and across said alleged highway, so as to connect with the tracks of said Chicago Terminal Transfer Railroad Company; that the village trustees are about to pass said ordinance; that said railroad companies and stone company have entered upon said land, and surveyed the route of said proposed railroad, and driven stakes to mark the line thereof, and prepared maps thereof; that the defendants are about to enter upon said land and construct a road-bed and about one hundred feet of railroad thereon, and particularly across said alleged highway; that the work of building said railroad across said land would cause irreparable damage to complainants, and will ruin their said property for quarry purposes, etc.

A temporary injunction was issued, restraining defendants from building the proposed railroad across said lot. On April 25, 1899, the Dolese brothers, and the Dolese company, and the village of Summit filed their an-

swers, alleging therein that the highway in question had been laid out and used for more than twenty years, and admitting the adoption by said village board of trustees of an ordinance permitting the said Dolese Bros. Company to build a railroad track across said highway, and avowing the intention of said company to build the same. On April 25, 1899, the bill was dismissed as to the defendant, the village of Summit. On May 12, and May 23, 1899, the railroad companies and the stone company filed their answers, alleging their ignorance as to the existence of such highway, etc. Replications were filed to their answers.

On June 23, 1899, complainants below filed a supplemental bill, in which they alleged, that, since the filing of the original bill, and owing to a modification of the injunction, the defendants had constructed said track from a point on the south line of said lot 5 in a northerly direction on said lot to the right of way of the Chicago Terminal Transfer Railroad Company, and threaten to connect said track with the railroad of the Chicago Terminal Transfer Railroad Company, and to operate the same as a side or switch track, and to use it for carrying stone from a quarry, to be operated by the Dolese Bros. Company, to the track of said Chicago Terminal Transfer Railroad Company; that the Dolese Bros. Company threatens to keep and maintain said track on said lot 5; that the same interferes with the use of their land by the complainants, and is a nuisance, and causes irreparable injury to the premises. The supplemental bill prays for an injunction to restrain said railroad company from operating said railroad across said premises, or from running cars over the same, etc.

After the taking and introduction of testimony on June 30, 1899, the court rendered a decree, finding that there was then, and for more than twenty years last past had been, a public highway across said lot 5 as shown by a certain plat, approved by the trustees of said village

on May 1, 1899; that said highway was surveyed and laid out by the road commissioners of the town of Lyons more than twenty years ago in the location shown on said plat; that there is no equity in the bill of complainants; and decreeing that said bill be dismissed with costs, and that the temporary injunction theretofore issued be dissolved. Exception was taken to the decree by the complainants; and the present appeal is prosecuted from such decree.

HINER & WATERS, for appellants.

EDWARD F. GORTON, and GEORGE W. BROWN, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

It is conceded by both parties, that the only controversy in this case is as to the existence of an alleged public highway, referred to in the pleadings, across the property of the appellants herein.

Lot 5, belonging to the appellants, runs east and west, is four chains wide, and the west line thereof is the north and south quarter section line of section 11. South of lot 5 is lot 6, known in the record as the Doud lot, and in which the defendants, the Dolese Bros. Company and the Dolese brothers, have an interest. North of lot 5, and parallel with it, are lots 4 and 3, owned by one Jane S. Martin, and having each the same width as lot 5, and terminating, on the west ends thereof, at the north and south quarter section line of section 11. North-east of lot 5 is a public road, called the Lyons and Summit road, running from the north-west towards the south-east, and crossing the DesPlaines river by means of a bridge erected over the same. West of the west ends of lots 5, 4 and 3 and west of said north and south quarter section line is another road, running in a westerly direction, known as the Joliet road. The highway, whose existence is the matter in dispute, runs from the Lyons and Summit road,

starting at a point about four hundred feet north or north-west of the center of the bridge over the DesPlaines river, and proceeds in a south-westerly direction across lots 3, 4 and 5 to the south-west corner of said lot 5. The alleged highway is claimed to be sixty-six feet wide, and is three-fourths of a mile long.

The appellees, the Dolese brothers, and the Dolese Bros. Company, and Edward Doud, who own and are interested in lot 6, south of lot 5 owned by the appellants, desire to connect their property, upon which there is a stone quarry, with the tracks of the Chicago Terminal Transfer Railroad Company, and, perhaps, of the other companies above named. The intention is to make this connection by running a railroad track, or a side or switch track, from the quarry on lot 6 to the tracks of the railroad companies which cross the lot of appellants on the west side thereof. In order to make this connection, the side or switch track to be constructed must necessarily pass over a part of lot 5, owned by the appellants, at the south-west corner of said lot, or at a short distance east from said south-west corner. If the alleged highway exists at the location where it is claimed by the appellees to exist, then the side or switch track will run across that portion of lot 5 belonging to the appellants, which is embraced in the highway. If no highway exists, then, of course, appellees could not cross the property of appellants without paying for the privilege of so crossing it, or for the land taken by the construction of the switch track. If, however, a public highway does exist, then appellees claim, that they have a right to cross said highway with their side or switch track under the ordinance passed by the trustees of the village of Summit, permitting them to do so. The theory of the appellees is, that the highway in question was originally controlled by the highway commissioners of the town of Lyons until about June 1, 1890, and, after the latter date, by the authorities of the village of Summit.

It thus appears, that, in this litigation, the object, which the appellees have in view in establishing the existence of the highway, is not that the public may have the use of said highway, but that, by reason of its existence, they may secure the privilege of crossing it with a private switch track for the purpose of promoting the interests of their private business.   We do not deem it necessary to discuss the question whether, if a highway or street in fact existed upon the designated location, the village authorities would have the right to surrender any part of it to the use of private individuals or private corporations for the promotion of their own private interests.   The consideration of this question is unnecessary, because it seems to be taken for granted by counsel on both sides in this case, that, if the highway existed, the village authorities had the right to permit the switch track of the appellees to cross it.

As evidence of their right to thus cross the alleged highway, the appellees introduced an ordinance, passed by the village of Summit on May 1, 1899, granting to the Dolese Bros. Company and Edward Doud, their successors and assigns, for twenty years, the right to construct, maintain and operate a switch track or tracks upon and across the highway, known as the Doud or Joliet and Summit road, from a point on the north line of said lot 6 in the subdivision of the south-east quarter of section 11, township 38 north, range 12, northerly and westerly to the right of way of the Chicago Terminal Transfer Railroad Company and the Atchison, Topeka and Santa Fe Railroad Company, as indicated by a certain plat therein referred to.   The appellees also introduced another ordinance, passed on May 1, 1899, adopting said plat as the plat of the road, and reciting that the same is adopted for the purpose of showing the location of said road.   The plat so adopted was made on April 28, 1899, after the filing of the original bill herein, and gives to the alleged highway a width of sixty-six feet.

The evidence is undisputed, that what is claimed to be the highway runs over unenclosed land, which is stony land and appears to be adapted to the limestone and quarry business. The land in question was never fenced in. No fences were ever erected on either side of the highway in question to mark its boundaries or limits. Whatever road there was ran across the open prairie. The testimony upon the subject, as to the extent to which the highway was used by the public, is conflicting. The testimony of the appellees tends to show a considerable amount of travel over the road during the twenty or twenty-five years prior to the entry of the decree in this case. Counsel for the appellees contend that the road has existed, as such, for more than twenty years, and has never been obstructed, closed or abandoned, and that it was regularly surveyed and laid out by the town of Lyons. On the contrary, counsel for the appellants claim that the land of the appellants, like the rest of the open prairie in that neighborhood, was used to a limited extent by different people, who found it convenient to drive over it, but that, inasmuch as the owners failed to enclose it and merely permitted people to walk or drive over it, there was no such use of it as created a highway by prescription. It will be impossible for us to examine and analyze all this testimony within the limits of this opinion. We will, therefore, only allude to a few of the salient features by way of indicating the reasons for the conclusions at which we have arrived.

The land in question being unenclosed prairie land, the rule applies, which has been held by this court in a number of cases, that, where land is vacant and unoccupied and remains free to public use and travel until circumstances induce the owners to enclose it, the mere travel across it without objection from the owners does not enable the public to acquire a public road or highway over the same. Such use by the public of vacant and unoccupied land by travel over it, even after the

period of twenty years, is regarded merely as a permissive use. Such user continues to be regarded as being by permission of the owner until he does some act, or suffers some act to be done, by way of asserting his ownership over the land thus used. In other words, there. must be something more than mere travel over unenclosed lands by the public, in order to establish a public highway over the same by prescription. (*Warren* v. *Town of Jacksonville*, 15 Ill. 236; *Kyle* v. *Town of Logan*, 87 id. 64; *Town of Brushy Mound* v. *McClintock*, 150 id. 129; *City of Ottawa* v. *Yentzer*, 160 id. 509). We do not wish to be understood as holding that a public highway cannot be established by prescription over vacant and unenclosed and unoccupied land, but we do hold that, in order to so establish a public highway, there must be something more than mere travel over it by the public.

In order to establish a highway by prescription, the public use must be adverse, uninterrupted, exclusive, continuous, and under claim of right. (*Illinois Central Railroad Co.* v. *City of Bloomington*, 167 Ill. 9; *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 id. 561; *Town of Brushy Mound* v. *McClintock, supra; Town of Madison* v. *Gallagher*, 159 Ill. 105). Where the use is merely permissive, it cannot be adverse. Where the use is by mere permission of the owner, and not adverse, there is no basis on which a right of way by prescription can rest. The reason, why it has been held by the courts, that the use of vacant, unenclosed, and unoccupied land for twenty years by the public in passing and re-passing, will give them no prescriptive right, is, that such use is presumed to be merely permissive and not adverse. (Elliott on Roads and Streets, p. 137). In *Town of Brushy Mound* v. *McClintock, supra,* we said (p. 133): "In order to establish a public highway by prescription over unenclosed lands, there must be something more than mere travel over it by the public. It must appear that the user is under a claim of right in the public, and not by

mere acquiescence on the part of the owner.  Express notice is not necessary, but there must be such conduct on the part of the public authorities as to reasonably inform the owner that the highway is used under a claim of right." In the *McClintock case, supra,* it was held, that, where a public highway was located on a tortuous line, and where little work was done on it during the years when it was traveled over, and where the work done did not amount to an improvement of a public highway, but was rather for the temporary purpose of travel, the owner of the land could not be charged with notice that such use was under a claim of public right.

After a careful examination of all the evidence, we are not satisfied that there was such a use by the public of the premises in question for the purposes of a public highway, as to give any notice to the owners that such use was under a claim of public right.  The line of travel across lots 3, 4 and 5 during the time mentioned in the decree of the court below was tortuous in its character, and not confined within the limits of the ordinary highway.  Even the witnesses of appellee speak of the line of travel as being along a strip of ground, varying in width all the way from ten or twelve feet to one hundred and fifty feet.  Little work was done on the alleged highway during the years when it was traveled over.  In April, 1871, a plat was made of the south-east quarter of section 11, and acknowledged by the owners at that time of lots 3, 4, 5 and 6; and this plat, although duly recorded in 1871 and re-recorded in 1873, does not indicate the existence of any highway over the lots.  Deeds of lot 5, made by various grantors, under whom the present appellants hold, and executed during a period of seventeen years prior to the commencement of the present proceeding, do not refer to the existence of any such highway, but convey lot 5 irrespective of any interest therein by the public for the purposes of a highway.  Lot 5 was conveyed to one Moses H. Thompson on April 22, 1887, and

he owned the land until December 12, 1891, when he con-
veyed it to Thomas O'Connell, the grantor and ancestor
of the present appellants.   Moses H. Thompson testifies
that he bought the land in 1887 for his son, Walter M.
Thompson, and a partner of the latter, one Edward Bell.
He swears that he saw no travel over the land, although
there were a few wagon tracks over the same.   He says
that there were tracks all over it, and that it was not
fenced, but was "all wild, all commons;" and that the
surface of the ground was grass and refuse stone.   For
several years after the spring of 1887 Thompson and Bell
used the premises in question in the stone and lime busi-
ness.   They operated a stone quarry on lot 5 and their
lime-kilns were located thereon.   Walter M. Thompson
swears that there was no travel over lot 5 during the
years 1887, 1888, and 1889, except to and from Doud's
house, which was located on lot 6; that they simply al-
lowed Doud to drive out as a matter of courtesy; that he
never saw a team there during all that time with the
exception of the wagon of a butcher, who used to drive in
from Riverside, and then drive out across lot 5 into Sum-
mit; that, with the exception of this butcher's wagon,
he never saw a wagon go across the lots except his own
wagons, which were drawing material from the quarry
on lot 5 to the scales and lime-kilns thereon; that there
was no work on the road; that there were wagon marks
from the bridge up to Doud's house; that he and his part-
ner built some roads to haul stone from the quarries on
lot 5; that they built a pair of scales five hundred or six
hundred feet east of the kiln, near the center of the lot;
that the scales and approaches thereto occupied a space
sixty feet long; that he never saw any well-defined road-
way across lot 5 during 1889, nor any wagon tracks, nor
any one working on any road across the lot, except his
own men making their own private roads.   Edward Bell
also swears that, in 1887 and 1888, there was practically
no travel across lot 5 except by "Doud's folks" and

Thompson and Bell and their men; that there was no defined road of any kind from the Lyons and Summit road down towards their kiln; that there were wagon tracks all over the ground, but not in one direction; that there was no path, but only an open prairie.   It appears from other testimony, that the scales in question were built upon ground alleged to be within the highway in question.  One of the main witnesses of the appellees testifies, that the wagon tracks ran one hundred feet or one hundred and twenty-five feet in width, and that, although he saw stone in different places on the land, yet he could not say that such stone was in such position there, as necessarily to indicate that it had been put there for the purpose of making a road.  He says: "It was simply along the line of the road, and   *   *   *   seemed to have been thrown off from the wagons as they saw fit to throw them off."

It thus appears from the testimony of parties, who owned this land for some three or more years during the twenty years prior to the commencement of this suit, that they discovered nothing in the use of the alleged highway, or in the travel over it, or in the improvement of it, which gave them any notice of a claim to it by the public.   Andrew J. O'Connell, whose father purchased the land in 1891, was with his father when he made the purchase, and says that the tracks were scattered, and that there were from six to eight different tracks, and that they ran in different directions, and were not defined; that he never saw more than a single wagon, not connected with the business upon the premises, drive over it; that no work was done on it, and that it was an open prairie.   Louis Enright testifies that he surveyed the road in 1894, and that there were a few wagon tracks there, but that they led in every direction, and not to or from any particular points; that it was an open prairie, and that there was no road through there at all.

The testimony does not show clearly that the public authorities did any work upon the so-called road, which

amounted in any way to an improvement thereof. In 1894, however, the village authorities employed a surveyor to make a survey of the proposed road across the land, but no formal proceedings were taken. A macadam grade was put upon a line of the survey which was made in 1894, but was not continued beyond lot 5 because of the injunction procured by the owner of lots 3 and 4, as hereinafter more particularly referred to.

There is nothing to show that the use of the land, under claim of right thereto in the public, was with the knowledge of the owners. The evidence is to the effect, that the line of travel shifted during the period of twenty years mentioned in the decree. It is also shown by the testimony that the public authorities did nothing to indicate the public claim of right. Under these circumstances, the prescriptive right to the highway by user cannot be acquired. (*Town of Madison* v. *Gallagher, supra; Town of Brushy Mound* v. *McClintock, supra; Houston* v. *People,* 63 Ill. 185). Up to 1894, such travel as passed over the land took no fixed or definite course, but accommodated itself to circumstances, going around mud holes and boulders, and being deflected by the said scales erected in 1887. The general course of the alleged highway prior to 1894 was considerably south of the macadam road built in that year. Different diverging lines of travel, none of which are in use for the requisite period of twenty years, cannot be united in order to make such period. (*Gentleman* v. *Soule,* 32 Ill. 271). Nothing is better settled than that a highway by prescription is not created by public travel over the land generally, but that the line of travel must be within definite limits. These limits, and the location of the way or track, are often precisely defined by fences on the sides of the road. (*Town of Madison* v. *Gallagher, supra; Gentleman* v. *Soule, supra; City of Ottawa* v. *Yentzer, supra*). Whatever use of the road was shown by the testimony in this case seems to have been a use thereof by a few individuals in the neighborhood

for particular purposes, and not by the public generally. Such use by a few individuals does not constitute such use by the public as creates title by prescription. (*Martin* v. *People*, 23 Ill. 342).

It is claimed on the part of the appellees that the road in question was laid out by the highway commissioners of the town of Lyons about the year 1875, or, as one of the witnesses puts it, "some time in the seventies." No record was produced, showing any proceedings for the laying out of the road, but it was sought to be established by parol testimony. Even if such testimony was proper, it was too indefinite in its character to have any basis for the specific finding on that subject made by the court below. The commissioners of highways are required by law to keep a record of their proceedings at all meetings, and such records are the only lawful evidence of the action to which they refer, and cannot be contradicted, aided, or supplemented by parol evidence. (*People* v. *Madison County*, 125 Ill. 334). It is not clear that, if the road in question was laid out, any record was made of the proceedings in relation thereto. Robert Leitch, who was one of the highway commissioners at the time, states that he and Dr. Fox laid out the road, but never put it on record. Dr. Fox, the other commissioner who testifies on the subject, is not positive in his statements either as to what was done, or when it was done. An attempt was made to show by the latter witness, that the town records in regard to the laying out of the road were lost; but the loss of such records was not clearly shown. The town clerk originally, and after the organization of the village, the village clerk, was the proper custodian of the records, but no such witness was called to show that they did not exist. The statute, existing at the time, required that the proceedings to lay out highways should be taken only on petition filed and notice given, and that compensation should be paid to the owner of the land. (Rev. Stat. 1874, chap. 121, p. 924). The petition, notice,

and proceedings for the ascertainment of compensation were jurisdictional, and necessary to be shown, in order to establish the validity of the proceeding. (*Frizell* v. *Rogers*, 82 Ill. 109; *Warne* v. *Baker*, 35 id. 382; *Crossett* v. *Owens*, 110 id. 378). Here, no attempt was made to show compliance with the statute even by parol. Not only was no sufficient proof made of any order laying out a road, but there was a total absence of proof of judicial proceedings leading up to the order. The evidence in this case of those who are supposed to have participated in laying out the road, was too indefinite and uncertain to establish any formality requisite to its legal existence. Nor was there any evidence that the road was ever opened. If the road was regularly laid out, it was not shown that the highway commissioners took any steps at any time to open the road, or to make it available to the public.

We are, therefore, of the opinion that the finding of the court that the road in question was laid out by the road commissioners of the town of Lyons is erroneous.

But there is another circumstance, which militates most strongly against the contention made by the appellees in this case. An attempt was made in 1894 by the authorities of the village of Summit to build a macadam road from the south-west corner of lot 5 north-easterly across lots 5, 4 and 3, upon a part of the land embraced within the alleged highway. This macadam road was only twelve feet wide. After the village authorities had proceeded as far as the north line of lot 5, and for some distance north-easterly across lot 4, the owner of lots 3 and 4, Jane S. Martin, filed on September 29, 1894, a bill against the village of Summit, alleging that she was the owner of said lots 3 and 4, and that no road or highway had ever been laid out or opened through or across said premises; and that the board of trustees of the village had authorized the construction of said road across said lots 3 and 4, and was threatening to enter thereupon with laborers and material for the purpose of making such a

road.   The bill of Jane S. Martin was answered by the village of Summit.   The issue, made by the bill and answer in that case, was whether the very identical road now in controversy in this case was, or was not, a legally established highway.   On October 21, 1895, a decree, which is not shown to have been reversed or set aside, was entered in that suit, finding the allegations of the bill therein to the effect, that no such highway existed or ever had been laid out, to be true; and that the complainant was entitled to the relief therein prayed for, and decreeing that the village of Summit, its board of trustees, officers, etc., should be perpetually enjoined and restrained from further prosecuting the construction of said road upon and across said lots 3 and 4.   The proceedings and decree in the said case of *Martin* v. *Village of Summit* were offered in evidence upon the trial below, but were held to be incompetent and not binding upon the appellees upon the ground that the latter had not been parties thereto.

The proceedings and decree were competent evidence, and, as it seems to us, constitute an answer to the contention of appellees as to the existence of the highway in question.   The highway is alleged to have extended from the south-west corner of lot 5 north-easterly across lots 5, 4 and 3 to the Lyons and Summit road.   If a highway thus located was of any benefit to the public, it was for the purpose of furnishing a passage from the Lyons and Summit road south-west across the lots in question to the Joliet road west of the railroad tracks.   The highway was not complete, and could be of no service to the public, unless it passed over lots 4 and 3 as well as over lot 5.   The small portion of the highway, running from the south-west corner of lot 5 north-easterly on lot 5, could be of no service to the public generally, and of no use to anybody, except the owners of lot 5.   The issue in the case is as to the existence of the whole of the highway as extended across lots 3, 4 and 5, and not as to the

existence of a part of the highway extending only across lot 5. Appellees do not contend for the existence of any other highway than that which extends from the Lyons and Summit road clear across the three lots to the north and south quarter section line of section 11. But the decree in the *Martin case* was an adjudication, that the public were not entitled to any such highway over lots 3 and 4, and the construction of the same over those lots was perpetually enjoined. This decree virtually cut the highway in two, and adjudicated that it did not exist north of the north line of lot 5. In effect, the decree in the *Martin case* is an adjudication that the highway here contended for does not lawfully exist. It is true, that appellees were not parties to the suit by Martin against the village of Summit, but it is well established that judgments or decrees bind privies, as well as parties. Judgments are just as conclusive upon privies to an action, as upon the parties themselves. The person, who claims through or under one of the parties to a judgment or decree, will be affected by such judgment or decree. Every person is privy to a judgment or decree, who has succeeded to an estate or interest held by one who was a party to such judgment or decree, which succession takes place after the bringing of the action. (21 Am. & Eng. Ency. of Law, p. 139).

It cannot be doubted that the appellees the Dolese brothers, the Dolese Bros. Company, and Doud, were privies to the decree rendered in the *Martin case.* (*City of Chicago* v. *Drexel*, 141 Ill. 89). In the *Martin case* the village of Summit was defendant, and claimed, as the representative of the public, to be the owner of the highway in question. Upon its organization, the village succeeded to whatever rights the town of Lyons had in the highway. The decree in the *Martin case* adjudicated upon the rights of the village in and to this very highway. The appellees last above named are here claiming the right to use this highway through an ordinance passed by the village of

Summit, giving them permission to cross the highway. They set up no rights here, except so far as they derive them from the village, and its ordinance, as already described. Hence, they cannot be regarded otherwise than as privies, claiming in privity with the village of Summit. Their rights are, therefore, affected by the decree rendered in the *Martin case*. As that decree held that the village of Summit had no right to the public highway which is here claimed to exist, the village could not clothe these appellees with any right or interest in said highway. In order to succeed here under the issues made by the pleadings, appellees must establish the existence of the alleged highway throughout its whole length across the three lots 5, 4 and 3; and as the Martin decree stands in the way of the establishment of any such highway, the defense made by the appellees to this bill falls to the ground. It makes no difference whether the decree in the *Martin case* was a consent decree or not. Even if entered by consent of the village, it is binding upon those who are in privity with the village.

It is claimed that the case made by the bill here is not a case for equitable relief; that the remedy of the appellants is at law. The creation of a highway diagonally across the lots of the appellants would interfere with their work in their quarries. The object of the bill is to prevent an irreparable injury to the property. We think that the bill will lie under the circumstances here shown to exist. Appellants owned the fee in lot 5, and, even if the highway were established over it, they would still own the fee subject to the easement of the public. The construction and operation of a steam railroad in a public street, the fee of which is in an abutting owner, constitutes an additional servitude. A railroad company cannot lawfully appropriate a street or highway until it condemns the abutting owner's interest, even though it is authorized by a city ordinance to lay its tracks therein; and such abutting owner may enjoin a steam

railroad company from constructing and operating its railroad therein to the practical exclusion of the public, where no compensation for his interest has been made, even though the company is acting under a city ordinance. (*Bond* v. *Pennsylvania Co.* 171 Ill. 508). The construction of this side or switch track across the property of the appellants would be a permanent and continuing injury, for which an action at law would not be a complete and adequate remedy. (*Carpenter* v. *Capital Electric Co.* 178 Ill. 29). Injunction is the proper remedy where cities or villages or public officials, under color or claim of right, are illegally attempting to take the property of the citizen. (*Bryan* v. *City of East St. Louis*, 12 Ill. App. 390).

The decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*