PROVO STY, J.
In her answer the city avers: That she desires to widen a stretch of land known as Gentilly avenue, which is now occupied partly by a public road, and partly by the plaintiffs herein without any right or title thereto. That:
*11 “Same was originally claimed by Juste Le-beau, and that said Lebeau’s claim to this property was confirmed to him, and the same was described as 6 arpents on the public road by 20 arpents in depth. That that part of the public road which is at present occupied by the plaintiffs as trespassers was at one time a navigable stream known as Gentilly or Savage Bayou. That since that portion of the city has been drained the said navigable stream has become dry, and a portion of the bed of said stream, without any right, has been fenced in by plaintiffs, and the public road that should otherwise be open to the public is now, and has been for some time back, occupied by private owners. That these 20 arpents in depth from the north side of the Bayou Gentilly or Savage was included in the strip of land called public road, about 200 feet in width; that the vendees of said Juste Lebeau have built fences across the bayou aforesaid, without any right or title thereto, and have left but a small space of about 40 feet for the convenience of ■ the public.”
Plaintiffs claim to own the entire land under fence — that is to say, as far as the existing public road — in other words, including the bed of the so-called bayou, and deny that said so-called bayou was ever navigable.
The questions raised by these pleadings are: First, whether said Bayou Savage was navigable at the time of the confirmation of Lebeau’s claim; and, if it was, then, second, whether the confirmation included any land between the public road and the bayou.
This Lebeau confirmation had a front of six arpents on the public road. The plaintiffs are owners of four of these six arpents. The other two are owned by one Zagame, who was plaintiff in the suit exactly similar to this one, decided by this court and reported at page 388 of 128 La., 54 South. 916. In that case this court said:
“In this case a competent civil engineer testified that the original United States map and survey of the tract confirmed to Lebeau shows that the depth of 20 arpents was measured from ‘the far or lake side of Bayou Savage,’ or on the side opposite to the Gentilly high road. Hence the term ‘on the north side’ was evidently intended to designate merely the direction. The same witness also testified that, acgording to the original United States map and surveys, a space about 250 feet wide, including the bayou, was left between the lines of survey on each side. It seems that a public road has existed from time immemorial on the south bank of said * * * settlement of the country. It has become necessary to enlarge the width of the present highway for the convenience of the public.”
The plaintiffs in the instant case, not being willing to admit the correctness of the survey upon which this court relied in that case, caused experts to be appointed by the court to make a survey and to report, and also proposed to show that the testimony upon which the court relied on in that case was incorrect; but, when plaintiffs offered in evidence the report of said experts and said testimony, objection was made that the appointment of experts was unauthorized by law and was unnecessary, and that the decision in said Zagame Case was res judicata of the present case, and the court sustained the latter ground of objection and ruled out the evidence.
[1] We assume that our learned Brother of the trial court would not have sustained the first ground of objection, as the object of the present suit is to fix the limits between two tracts of land, and the Code, articles 833 and 841, expressly provides that in such cases experts must be appointed.
[2] The ground of res judicata is equally untenable, since the present plaintiffs were not parties to the former suit. Our learned Brother thought they were for the reason that they and Zagame hold under a common author (Lebeau) and stand in his place. If Lebeau had been the plaintiff in the former suit, the plaintiffs in the present suit would be bound by the decree there rendered. They would be his assigns, and could have derived from him no greater rights then he had. But the plaintiffs are not assigns of Zagame; and Zagame had no mandate from them of any kind to represent them in that suit, and was utterly without quality to do so. Therefore the judgment in that suit is not res judicata against them, unless, indeed, a litigant can be bound by a judgment rendered in a suit to which he was *13 not a party, either in person, or by agent, or by representation of the party in whose right he holds.
The learned counsel for the city argue that “plaintiffs were constructively parties to the Zagame suit,” and in support of that proposition cite the case of Xiques v. Bujac, 7 La. Ann. 498, where, after the question of whether a certain square had been dedicated to the public had been litigated between the city and the h.eirs of the alleged dedicator, the property owners around the square sought to litigate the same question over again with the same heirs, and the court held that the city had in the first suit championed the rights of these surrounding property owners relative to the public or private character of said square, and that the said property owners were concluded by the judgment there rendered. Counsel says:
“Upon the theory that the municipal authorities represent not only corporators, but the public, in relation to public places and streets, a final judgment against them is a judgment against the public. We submit, therefore, that the reverse of this proposition is equally true ”
Learned counsel lose sight here of 'the fact that the reason why the members of the public are held bound by the decision in such a case is that the municipality stands in the case as their representative, champions their rights; whereas in this Zagame Case the municipality was not championing the rights of these present plaintiffs, but quite the contrary. If the rights of these plaintiffs were being championed at all in that suit, it was by Zagame; but, we repeat, he was utterly without quality to do so.
Counsel cite the eases of Commonwealth of Virginia v. Levy, 64 Va. 21, and Stallcup v. City of Tacoma, 13 Wash. 141, 42 Pac. 541, 52 Am. St. Rep. 25. We have not read these decisions, but we note, from the outline of them in counsel’s brief, that in the one first mentioned a will was sought to be attacked by the residuary legatee of a fund on the same grounds on which it had been attacked unsuccessfully in a previous suit by the trustee of the fund under the will, and that in the one second mentioned a taxpayer, in his quality of taxpayer, sought to litigate a question which another taxpayer, in the same quality, for himself and all others similarly situated, had litigated in a previous suit. Naturally these decisions in the previous cases were held binding on these litigants, since they had been represented in them, in the one case by the trustee, in the other, by the litigating taxpayer. But, we repeat, the city was not representing these plaintiffs in this Zagame suit, and Zagame was not doing so, since he was utterly without quality to do so.
The judgment appealed from is set aside, and the case is remanded for further trial.
BREAUX, C. J., concurs in the decree.