ST. PAUL, J.
The relator obtained a permit from the city of New Orleans to erect a drug store ou State street; but when the work was begun the city withdrew said permit and stopped the work through its police force, as being done in violation of an ordinance prohibiting business establishments on said street. Article 5793, O. C. S.
Whereupon relator applied to one of the judges of the civil district court, and obtained an injunction forbidding said city from interfering with relator in the construction of said building, on the ground that said ordinance did not prohibit drug stores, and in the alternative that same was ultra vires and unconstitutional.
Thereafter certain property holders on said street sought and obtained, ex parte from another judge of said civil district court, an injunction restraining relator from proceeding further with said building on the ground that same was being erected in Violation of the ordinance aforesaid.
The relator thereupon sought and obtained from this court a writ of prohibition to said second judge, restraining him from enforcing his said injunction, as being in effect a setting aside ex parte of the injunction first obtained by relator.
I.
In Department of Conservation v. La. Gas & Fuel Co., 144 'La. 962, 967, 81’ South. 454, 456, this court said:
“ ‘The general rule is that injunctions should not be dissolved on the eso parte application of defendant, and the writ of certiorari will issue to reinstate the injunction when dissolved on such eat parte application without any hearing of the plaintiff.’
“It -would appear hardly necessary to say that to issue eat parte an injunction, restraining the operation of am, injunction previously issued, amounts to the same thing as an eat parte dissolution of the injunction previously issued.” (Italics ours.)
So that, if the property holders be privies to the suit pending between relator and the city, they were without right to proceed as they did and the writ of prohibition properly issued.
II.
In Xiques v. Bujac, 7 La. Ann. 499, a controversy arose between certain adjoining property holders and the claimants to a certain square of ground over the status of said square, whether public property or the property of the claimants. It had previously been decided between the claimants and the municipality that the square belonged to the claimants. Livaudais v. Municipality, 5 La. Ann. 8. Mr. Justice Rost, at page 515 of 7 La. Ann., said:
*377 • “I think, -with the district judge, that the question of title ought to be considered as closed by the former decision. Having lately had occasion to determine that, in relation to public places * * * within this city, the municipal authorities represent not only the corporators, but also the public, and there being a final judgment against them in this case, and through them against the public and the corporators, I do not perceive how the plaintiffs can again bring the question before the court. I understand the power given to corporators, to sue in such a case, as existing only so long as the municipal government has not exercised it.”
And the doctrine so announced was approved by this court in Aurianne v. City, 133 La. 10, 62 South. 163, where the court said:
“The reason why the members of the public are held bound by the decision in such a case is that the municipality stands in the case as their representative, champions their rights.”
In Elson v. Comstock, 150 Ill. 303, 37 N. E. 207, precisely the same situation was presented as in Xiques v. Bujac, supra, and it was held that a previous judgment in favor of defendants and against the village of North Peoria—
“must be regarded as res judicata so far as the right of the village to possess and use the block as and for a public square was concerned, and also conclusive upon lot owners in the village to the rights they might otherwise have to such use of the block, because their rights were dependent upon those of the village,”
The concluding words of the opinion are:
“The judgment is also conclusive upon any rights, which the plaintiffs in error might otherwise have to such use of' the block, because their rights are dependent upon those of the' village, and can only be derived and held through the village, 'as the representative of the public.” (Italics ours.)
In O’Connell v. Chicago Terminal R. R. Co., 184 Ill. 308, 56 N. E. 355, it was held that—
“One claiming under a village ordinance the right to construct a steam railroad across a highway alleged to exist over three lots is privy to a prior decree against the village establishing the nonexistence of such highway, across two of the lots, and the record of that suit is admissible in a proceeding by the owner of the third lot to enjoin the construction of the railroad upon the ground that no highway existed thereon, even though the complainant was not a party to the original suit.”
And the court said further at page 324 of 184 Ill., at page 361 of 56 N. E.:
“(Some pf] appellees * * * are here claiming the right to use this highway through an ordinance passed by the village of Summit, giving them permission to cross the highway. They set up no "rights here, except so far as they derive them from the village, and its ordinance. * * Hence, they cannot be regarded otherwise than as privies claiming in privity with the village of Summit. Their rights are, therefore, affected by the decree in the Martin case. As that decree held that the village of Summit had no right to the public highway which is here claimed to exist, the village could not clothe these appellees with any right or interest in said highway.”
Now in the case before us the property holders claim no right, and have no right, except such as is derived from the city itself through said ordinance, which, indeed, the city may amend or repeal at will. And' if it be held that the city itself "cannot enforce said ordinance, either because it does not affect relator or because it is inherently void, it would be strangely inconsistent if it might be held, on the other hand, that the property holders may so enforce it.
So that whether we look upon the city as the representative of the whole public, or look upon these property holders as deriving their claim in this instance only through the city, and it's Ordinance repealable at its will, we are bound to conclude that they are privies to any suit between the relator and city. And hence, for them to have sought out the second injunction would be the same as if the city itself had done so, which as we first said the city could not do.
III.
Counsel for the property holders cite us several cases which hold, in effect, that, with respect to the use and existence of public *380 streets, judgments against the city are not always binding upon the abutting property holders. But these decisions are in no way apposite; municipalities have neither at common law nor by the civil law any property in the streets, but only the administration thereof, and the special property which abutting proprietors have in such streets is not derived from or through the city or its ordinances. On the contrary, such special property is often held adversely to the city, as where an abutting proprietor seeks to prevent the closing of a public street by the municipality.
We are of opinion that the writ of prohibition herein issued should be .perpetuated.
Decree.
It is therefore ordered that the rule herein issued be made absolute, and accordingly the writ of prohibition is made perpetual.