STEVEN WEHDE *et al.*, Plaintiffs-Appellants, v. THE REGIONAL TRANSPORTATION AUTHORITY, Commuter Rail Division (METRA), Defendant-Appellee.

Second District No. 2—91—1333

Opinion filed November 24, 1992.

Christin J. Wehde, of Ingleside, and Voegtle & Lichter, of Libertyville (Clayton P. Voegtle, of counsel), for appellants.

John W. Quinn, of Churchill, Baumgartner & Phillips, Ltd., of Grayslake (John Baumgartner, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs in this case seek the right of access to their respective parcels of land by claiming a prescriptive easement over a set of railroad tracks owned by the defendant, Commuter Rail Division of the Regional Transportation Authority (Metra). Plaintiffs Steven Wehde and Christin Wehde appeal from an order granting summary judgment in favor of Metra. The American National Bank and Trust Company of Waukegan, as trustee of land trust No. 983, coplaintiff, appeals from an order granting Metra's motion for judgment at the close of plaintiffs' case. For the following reasons, we reverse both rulings and remand.

Both parcels of land involved in this case are located in or near the Village of Ingleside, Lake County, Illinois. The first parcel (Trust Parcel) consists of approximately 33 acres and is situated directly north of the second parcel (Wehde Parcel). A set of railroad tracks running in a northwesterly direction abuts the northeast area of the Trust Parcel. A roadway runs off of Ingleside Avenue in a southwesterly direction north of the tracks, crosses the railroad tracks at the point they abut the Trust Parcel, and proceeds onto plaintiffs' land.

When Klaas and Andrea Bleeker purchased the northern parcel from Catherine Graham in April 1954, there was allegedly a crossing of blacktop and ties over the railroad tracks. In May 1954, the Bleekers conveyed a 20-foot-wide strip of land along the eastern edge of the parcel back to Catherine Graham to provide access to the crossing from the parcel of land immediately south. In November 1966, the Bleekers sold the northern parcel, excluding the 20-foot-wide strip, to Howell and Mimi Howard. The Howards retained title to the property until 1973, when it was sold to Richard Sachse. In 1976, Sachse

placed the parcel in trust with the American National Bank and Trust Company of Waukegan, plaintiff, as trustee for the benefit of Tom Lyon, Ray Western and himself.

The second parcel (Wehde Parcel), situated directly south of the Trust Parcel, consists of approximately 20 acres and the 20-foot-wide strip of land running north and south along the eastern edge of the Trust Parcel. The chain of title contained in the record reveals that Walter and Shirley Muehlfelder and Fred and Nerieda Muehlfelder purchased the land from Robert and Betty Graham, Mary and Vincent Lennon, and Donald and Audrey Graham in December 1958. The record also reveals that Catherine Graham conveyed the 20-foot-wide strip of land to the Muehlfelders in January 1959. In 1985, the Muehlfelders conveyed the entire southern parcel, including the 20-foot-wide strip, to Steven and Christin Wehde, plaintiffs.

Prior to the commencement of this litigation, plaintiffs believed the 20-foot strip reached the location of the crossing, since it had been used as a means of access by the owners and their predecessors. During the lawsuit, the Wehdes discovered that the description of the 20-foot strip conveyed to them by deed from the Muehlfelders did not actually touch the crossing. Thus, a written easement was prepared between the American National Bank and the Wehdes, connecting the 20-foot strip to the crossing. The easement provided that it shall run with the land and granted the Wehdes and future owners of the Wehde Parcel the right of ingress and egress for vehicular and other traffic used in connection with the use and enjoyment of the property.

All persons occupying the subject parcels allegedly utilized the subject crossing for ingress and egress. Because of the topography of the land, plaintiffs contend that the subject parcels are landlocked without use of the crossing. Although the exact date is unknown, the crossing was removed in approximately 1977 without notice to the property owners. When the Wehdes purchased the southern parcel and the 20-foot-wide strip in 1985, they allegedly made a demand upon the Soo Line Railroad, the owner of the railroad at that time, to reinstall and upgrade the crossing. Because there was no response, the Wehdes upgraded the crossing at their own expense in November 1987. The Wehdes allegedly utilized the crossing to access their property until October 1988, when they were notified by Metra, owner of the railroad, that the crossing was being removed. The Wehdes attempted to enjoin and restrain Metra from removing the crossing by filing a complaint for an emergency injunction on October 11, 1988. An emergency hearing was held, and a temporary restraining order was issued against Metra. However, Metra completed the removal of

the crossing. Therefore, no hearing was held for a preliminary or permanent injunction.

On June 26, 1991, plaintiffs filed a third amended complaint seeking to establish their rights and liabilities concerning the crossing. In count I, plaintiffs asserted their right to a prescriptive easement over the crossing. In count II, plaintiffs alleged that Metra violated section 18c–7401 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 18c–7401) by removing the crossing without prior consent of the Illinois Commerce Commission (ICC). The relief plaintiffs sought on both counts was a declaration of their right to the easement and an order enjoining and restraining Metra from interfering with their use of the crossing. Count III contained a claim for fees and an injunction for violations of both the due process clause of the United States Constitution (U.S. Const., amend. XIV) and 42 U.S.C. §1983 (1988). In count IV, plaintiffs claimed damages for deprivation of access to their property and reimbursement for the costs of reconstructing the crossing which was wrongfully removed by Metra.

Metra moved for summary judgment on the basis that there was no genuine issue of material fact concerning plaintiffs' right to a prescriptive easement for vehicular traffic. Plaintiffs responded by filing a countermotion for summary judgment. Metra objected to plaintiffs' motion for summary judgment on the basis that plaintiffs attached the affidavits of several new witnesses and there was insufficient time for Metra to take their depositions before trial. On this basis, the trial court ordered plaintiffs' motion for summary judgment stricken.

At this point, Metra's motion for summary judgment remained pending. It was argued immediately before trial and was taken under advisement. At the end of the second day of trial, the court entered summary judgment in favor of Metra as to the Wehde Parcel and admitted all evidence and testimony adduced at trial as an offer of proof. Metra's summary judgment motion as to the Trust Parcel was denied. At the close of plaintiffs' case in chief, the trial court directed a finding in favor of Metra as to the Trust Parcel pursuant to Metra's motion for judgment at the close of plaintiffs' case in chief. Both the Wehdes and the American National Bank appealed from the court's rulings.

I

In entering summary judgment in favor of Metra as to the Wehde Parcel and directing a finding in Metra's favor as to the Trust Parcel, the trial court determined that "as a matter of law no easement may be established for a private crossing of the tracks of a railroad." The

court stated that it based its ruling on holding of *Chicago, Burlington & Quincy R.R. Co. v. Malmgren* (1922), 224 Ill. App. 93. The facts of *Malmgren* are similar to this case in that the defendant railroad company erected a fence to prevent the plaintiff from using the railroad right-of-way to obtain ingress and egress between his farm and the public highway. However, this is where the factual similarity ends. In *Malmgren*, the sole issue was whether the railroad was compelled by statute to *maintain* a crossing for the plaintiff because he was a proprietor of land adjoining a railroad. (*Malmgren*, 224 Ill. App. at 95.) The *Malmgren* court concluded that the applicable statute compelled railroads to maintain only farm crossings, defined by the court as crossings adjacent to land owned by proprietors engaged in agriculture or stock raising. (*Malmgren*, 224 Ill. App. at 96.) According to *Malmgren*, the statute involved would not compel a railroad to *maintain* a crossing for proprietors of remote farmlands who have acquired an easement from the proprietor of the land adjacent to the railroad right-of-way. *Malmgren*, 224 Ill. App. at 98.

In the present case, plaintiffs seek the right to a prescriptive easement over the railroad right-of-way. They are not asking Metra to maintain the crossing pursuant to statute as in *Malmgren*. Nevertheless, the court assimilated sections 18c—7401 and 18c—7504 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, pars. 18c—7401, 18c—7504) with the statute involved in *Malmgren*. Section 18c—7401 of the Illinois Vehicle Code grants the authority to regulate public railroad crossings to the Illinois Commerce Commission. The relevant portions of the statute provide as follows:

"No *public* road, highway, or street shall hereafter be constructed across the track of any rail carrier at grade *** without having first secured the permission of the Commission; provided, that this Section shall not apply to the replacement of lawfully existing roads, highways and tracks. The Commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe. The Commission shall have power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of each such crossing.

The Commission shall also have power, after a hearing, to require major alteration of or to abolish any crossing, heretofore or hereafter established, when in its opinion, the public safety requires such alteration or abolition, and *** to vacate and close that part of the *highway* on such crossing altered or

abolished and cause barricades to be erected across such highway in such manner as *to prevent the use of such crossing as a highway*, when, in the opinion of the Commission, the public convenience served by the crossing in question is not such as to justify the further retention thereof." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 95½, par. 18c—7401(3).)

Section 18c—7504, however, describes the railroad's duty to maintain fences at crossings used by livestock, defined by *Malmgren* as "farm crossings." (*Malmgren*, 224 Ill. App. at 96.) Since neither statute speaks of a *private* crossing, the trial court concluded that "there is no such thing *** with regard to railroads as a private crossing. There are only two kinds of crossings, farm crossings and public crossings." The court went even further by concluding that "there is no ability as a matter of law to obtain a prescriptive easement for a private drive or private accessway to private property across a railroad right-of-way."

■■ First and foremost, the question of whether the crossing is characterized as public, private, or farm is a material issue of fact put in dispute *sua sponte* by the court. The classification of the subject crossing was not an issue raised by the pleadings. As such, it was improper to dispose of this issue at the summary judgment stage.

Furthermore, the trial court's ruling was erroneous as a matter of law. In their brief, the Wehdes refer to and attach a report compiled by the Federal Railroad Administration (FRA) Office of Safety, a division of the United States Department of Transportation. The publication reports a total of 6,357 private railroad crossings in the State of Illinois for the 1988 calendar year. (Federal Railroad Administration, Office of Safety, U.S. Department of Transportation, Rail-Highway Crossing Accident/Incident & Inventory Bulletin No. 11, at 45 (1989).) More recent statistics prepared by the FRA attached to the American National Bank's brief report a total of 6,153 private crossings in the State of Illinois as of December 31, 1990. The Wehdes' brief also includes portions of the second edition of a handbook prepared by the Federal Highway Administration (FHA). The handbook defines private crossings as "those that are on roadways not open to use by the public nor *** maintained by a public authority." Further, included under typical examples of private crossings are "[r]esidential access crossings over which the occupants and their invitees reach private residences from another road, frequently a public road paralleling and adjacent to the railroad right-of-way." Federal Highway Administration, U.S. Department of Transportation, Railroad-Highway Grade Crossing Handbook, at 213 (2d ed. 1986).

This statistical information was not presented in the proceedings below because the issue of the characterization of this crossing was not raised by the pleadings, but an issue put in dispute *sua sponte*. However, we may take notice of these publications as persuasive evidence. An appellate court may take judicial notice of factual matters not previously presented to the trial court when the facts are capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy. (*Vulcan Materials Co. v. Bee Construction* (1983), 96 Ill. 2d 159, 166; *Boston v. Rockford Memorial Hospital* (1986), 140 Ill. App. 3d 969, 972.) The statistics presented in plaintiffs' briefs were compiled by the FHA and the FRA, divisions of the United States Department of Transportation. Federal records and statistics have been recognized as public records of which courts may take judicial notice. (See *Newman v. Village of Hinsdale* (N.D. Ill. 1984), 592 F. Supp. 1307, 1309 n.8, *aff'd* (7th Cir. 1985), 767 F.2d 925 (judicial notice taken of snowfall records prepared by the National Oceanic and Atmospheric Administration); *Dietz v. Property Tax Appeal Board* (1989), 191 Ill. App. 3d 468, 477 (judicial notice taken of Illinois Real Property Appraisal Manual, issued by the Department of Revenue, as a public record); *In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 325 (statistics prepared by the United States Bureau of Census were the proper subject of judicial notice).) Although the information presented in the Wehdes' brief was not relied on by the parties or the court in the proceedings below, given the relevance of these facts, we elect to take judicial notice of the FRA and FHA publications.

Applicable case law further dispels the court's findings that denied the very existence of private crossings as well as a plaintiff's ability to obtain a prescriptive easement for a private drive across a railroad right-of-way. In *Pearce v. Illinois Central Gulf R.R. Co.* (1980), 89 Ill. App. 3d 22, 29-31, the court determined that the road at issue was a private crossing which abrogated the railroad's statutory duty to maintain. In *Martin v. Illinois Central Gulf R.R.* (1991), 237 Ill. App. 3d 910, 917, the court categorized the crossing at issue as "private" because a petition to recognize it as a public crossing had not been filed with the Illinois Commerce Commission.

Although these cases do not concern prescriptive easements, they do recognize the existence of private crossings. We agree with Metra that section 18c—7401 of the Illinois Vehicle Code does not allow the ICC to create private railroad crossings. Rather, this section confers jurisdiction concerning public crossings to the ICC and sets forth a rail carrier's duties with respect to public crossings in the interest of

public safety. Contrary to the court's determination, however, this enabling act does not cut off plaintiffs' right to a private crossing as a means of access to their property.

In *Smith v. Mervis* (1976), 38 Ill. App. 3d 731, the plaintiff claimed a prescriptive easement over a strip of land owned by a railroad which connected two parcels of his farm property. On appeal, the court stated as follows:

> "Respondents argue that one cannot acquire an easement by prescription on land which consists of a railroad right of way because that land is, in fact, publicly held property. Their contention is clearly erroneous. Illinois cases hold that a party can acquire a title by adverse possession to railroad land. (*Illinois Central R.R. Co. v. Wakefield*, 173 Ill. 564, 50 N.E. 1002.) If a party can obtain title by adverse possession against a railroad he can acquire the lesser interest of a prescriptive easement. (See dictum in *Heater v. Chicago & Alton R.R. Co.*, 200 Ill. App. 331[, 335].) Hence, the same rules concerning prescriptive easements apply to a railroad as apply to any other landowner." (*Smith*, 38 Ill. App. 3d at 732.)

Based on *Smith*, it is apparent that the court erred in concluding that it is impossible, as a matter of law, to obtain a prescriptive easement over a railroad right-of-way. Thus, it is necessary to determine whether the court erred in granting Metra's motion for summary judgment as to the Wehde Parcel and in directing a finding in Metra's favor as to the Trust Parcel.

## II. STANDARD OF REVIEW

In granting Metra's motion for summary judgment, the court stated that there were no contested questions of fact concerning the alleged easement by prescription over the railroad tracks. The court further stated that "the Plaintiffs, Steven Wehde and Christin Wehde neither individually nor as the owners of the real property described in their complaint are entitled to an easement for a crossing over the railroad tracks owned by the Defendant." On appeal, the Wehdes contend that the trial court erred in entering summary judgment in favor of Metra on the basis that genuine issues of material fact do exist concerning the existence of plaintiffs' easement by prescription.

■ The purpose of summary judgment is not to try the issues, but to determine whether any triable issues exist. (*Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 416; *Quinton v. Kuffer* (1991), 221 Ill. App. 3d 466, 470.) At the summary judgment stage, the plaintiff is not required to establish his case as he would at trial.

Instead, the plaintiff must present some factual basis that would arguably entitle him to a judgment in his favor. (*West v. Deere & Co.* (1991), 145 Ill. 2d 177, 182.) While the use of summary judgment is encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free of doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) A motion for summary judgment should be granted when the pleadings, depositions, and admissions on file, together with the affidavits, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Balla v. Gambro, Inc.* (1991), 145 Ill. 2d 492, 508.) An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law. (*Quinton*, 221 Ill. App. 3d at 471.) The trial court's decision to grant or deny a motion for summary judgment is not discretionary. (*Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824.) Rather, the reviewing court must apply the *de novo* standard of review and consider anew the facts and law related to the case. *Shull*, 223 Ill. App. 3d at 824; *Quinton*, 221 Ill. App. 3d at 471.

In granting Metra's motion for judgment at the close of plaintiff's case in chief, the court stated that "the Plaintiff, American National Bank and Trust *** has failed to introduce evidence sufficient to establish that it is entitled to an easement for either a farm crossing or an authorized public crossing over the railroad tracks of the Defendant." On appeal, the American National Bank contends that the court's ruling was improper.

■ In nonjury cases, the defendant may, at the close of plaintiff's case, move for a finding or judgment in his favor. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110.) In ruling on such a motion, the trial court must follow a two-step procedure. First, the court must determine whether the plaintiff has sustained its burden of proving a *prima facie* case by presenting at least some evidence on every element essential to the underlying cause of action. (*Bruss v. Klein* (1991), 210 Ill. App. 3d 72, 78; *Drew v. Whittington* (1987), 158 Ill. App. 3d 387, 391.) If a *prima facie* case has not been established, the court should grant defendant's motion and enter judgment in his favor. *Heller v. Jonathan Investments, Inc.* (1986), 113 Ill. 2d 60, 71.

If, however, the plaintiff has made out a *prima facie* case, the trial judge must weigh the plaintiff's evidence. Contrary to the *Pedrick* standard governing directed verdicts (*Pedrick v. Peoria &*

*Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510), the court is not to view the evidence in the light most favorable to the plaintiff. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154.) Instead, the court must consider all of the evidence, including evidence favorable to the defendant, pass on the credibility of the witnesses, draw reasonable inferences from the testimony, and consider the general weight and quality of the evidence. (*Kokinis*, 81 Ill. 2d at 154; *Melicharek v. Carson Pirie Scott & Co.* (1991), 215 Ill. App. 3d 873, 879.) After weighing the quality of the evidence, the court must determine, applying the standard of proof required for the underlying cause, whether sufficient proof remains to establish the plaintiff's *prima facie* case. (*Drew*, 158 Ill. App. 3d at 391.) If the trial court finds that the plaintiff's evidence is insufficient to satisfy the required burden of proof, the court should grant defendant's motion and enter a judgment dismissing the action. (*Bruss*, 210 Ill. App. 3d at 78.) However, the reviewing court will not reverse the trial court's ruling on appeal unless it is contrary to the manifest weight of the evidence. *In re Doyle* (1991), 144 Ill. 2d 451, 470; *Kokinis*, 81 Ill. 2d at 154.

We are asked to review the propriety of the court's judgment in favor of Metra at the close of plaintiffs' case in chief as to the Trust Parcel. The issue is whether the court's determination that the American National Bank and Trust failed to sustain its burden of proving that it acquired a prescriptive easement is against the manifest weight of the evidence. Because the court entered summary judgment in favor of Metra as to the Wehde Parcel, the issue is whether the pleadings, depositions, and admissions on file, together with the affidavits, reveal that there is a genuine issue of material fact concerning the Wehdes' claim that they have acquired a prescriptive easement over the subject crossing. Although we must apply a different standard of review to each ruling, the court expressly stated that it considered the evidence admitted at trial as an offer of proof in entering summary judgment as to the Wehde Parcel. Consequently, we will consider the evidence presented in support of plaintiffs' case in ruling on both issues.

### III

■ To establish an easement by prescription, the claimant must prove that the use of the land was hostile or adverse, uninterrupted, exclusive, continuous, and under a claim or title inconsistent with that of the true owner. (*Page v. Bloom* (1991), 223 Ill. App. 3d 18, 20; *Weihl v. Wagner* (1991), 210 Ill. App. 3d 894, 895; *Chicago Steel Rule Die & Fabricators Co. v. Malan Construction Co.* (1990), 200 Ill. App.

3d 701, 705-06.) These elements must have shared a concurrent existence for a continuous period of 20 years. Ill. Rev. Stat. 1989, ch. 110, par. 13—101; *Light v. Steward* (1984), 128 Ill. App. 3d 587, 593-94.

■ When there is privity between the users of the property, periods of use may be tacked together in order to satisfy the statutory period. (*Light*, 128 Ill. App. 3d at 594; *Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 579.) The requisite of privity exists when the latter user has succeeded to the interest of the earlier user by *inter vivos* conveyance, by descent, by devise, or by involuntary conveyance. *Light*, 128 Ill. App. 3d at 594.

In this case, the record reflects the following *inter vivos* conveyances of the Trust Parcel:

> 1954—quitclaim deed from Catherine Graham to Klaas and Andrea Bleeker in joint tenancy;

> 1954—quitclaim deed from the Bleekers conveying the 20-foot strip to Catherine Graham;

> 1966—warranty deed from the Bleekers to Howell and Mimi Howard in joint tenancy; and

> 1976—warranty deed from the Howards to the American National Bank and Trust Company of Waukegan as trustee.

Likewise, the record reflects the following *inter vivos* and involuntary conveyances of the Wehde Parcel:

> 1958—warranty deed from Robert and Betty Graham, Mary and Vincent Lennon, and Donald and Audrey Graham conveying a one-half interest to Walter and Shirley Muehlfelder in joint tenancy and a one-half interest to Fred and Nerieda Muehlfelder in joint tenancy;

> 1959—quitclaim deed from Catherine Graham conveying the 20-foot strip to the Muehlfelders in joint tenancy;

> Prior to 1985—Fred Muehlfelder died, passing an undivided one-half interest in the property to his wife, Nerieda Muehlfelder; and

> 1985—warranty deed from Nerieda Muehlfelder and Walter and Shirley Muehlfelder conveying the southern parcel and the 20-foot strip to Steven and Christin Wehde in joint tenancy.

The record reflects privity was established in each conveyance by the predecessors in ownership to both the Wehde Parcel and the Trust Parcel. Thus, we find that the periods of use of the owners of the individual parcels may be tacked together to satisfy the statutory period.

To meet the requirement of adverse use, the claimant must show that the use of the property or right-of-way was with the knowledge and acquiescence of the owner but without his permission. (*Deboe v. Flick* (1988), 172 Ill. App. 3d 673, 675.) While the burden of proof is on the party claiming the prescriptive right, the law recognizes rebuttable presumptions regarding the requirement of adversity. Where a right-of-way has been used in an open, uninterrupted, continuous and exclusive manner for more than 20 years and the origin of the claimed easement is not shown, there is a rebuttable presumption of adversity. (*Light*, 128 Ill. App. 3d at 596.) If the presumption arises, the burden of proof shifts to the defendant to present factual support · for the claim that a prescriptive easement did not arise. However, the issue of whether there was adverse use of a way under a claim of right for a period of 20 years is almost wholly a question of fact. As such, where there is conflicting testimony in a bench trial, the findings of the court will not be disturbed on review unless they are against the manifest weight of the evidence. *Page*, 223 Ill. App. 3d at 21.

In this case, neither party presented any evidence indicating the origin of the crossing. The earliest time to which the crossing was traced was through the testimony of Stewart Hoehne, chief of the Fox Lake fire department. Hoehne testified that he utilized the crossing for travel to and from work beginning in approximately 1943. At that time, Hoehne recalled that there were boards between the tracks allowing vehicles to drive across. Hoehne's testimony is corroborated by that of Gary James, a graphic supervisor for the Lake County Department of Planning, Zoning and Environmental Quality, who presented an aerial photograph dated July 20, 1939, which depicted the existence of the crossing.

The next point in time to which the crossing was traced was 1954, when Klaas and Andrea Bleeker purchased the Trust Parcel from Catherine Graham. Mrs. Bleeker stated that when she purchased the property, a road existed adjacent to Ingleside Avenue to the north side of the railroad right-of-way and crossed the tracks onto their land. She further stated that, at the time she and her husband were negotiating to purchase the property, the crossing consisted of deteriorating asphalt between the tracks and next to the embankment. The roadway on each side consisted of stone and gravel mixed with dirt. Upon their purchase, the Bleekers upgraded the crossing. Mrs. Bleeker testified that the only access to the house they built on the property was over the crossing because the south and west portions of the parcel consisted of swamplands which were frequently under

water. Mrs. Bleeker stated that her family and friends always used the crossing for ingress and egress, without permission.

Mrs. Bleeker's testimony was reiterated in an affidavit by her husband, Klaas Bleeker, who recalled the crossing of asphalt and dirt both prior to and at the time of their purchase. The Bleekers' son, Bruce Bleeker, who was 17 years old when his parents purchased the property, also recalled the crossing in his affidavit. He described the crossing as a mixture of gravel, asphalt and dirt, which was deteriorating and in need of repair. He reiterated that his parents upgraded the crossing after their purchase by loading gravel into the crevices and that they used the crossing for access to their property.

Howell and Mimi Howard purchased the Trust Parcel from the Bleekers in 1966. The Howards stated by affidavit that the railroad crossing was the only means of access to their property and that they used it without permission, as did all of their visitors. Howell Howard also recalled a crossbuck railroad crossing sign posted on the roadway at the junction of the crossing and Ingleside Avenue and painted whistle boards located in both directions on the track.

The next owner of the Trust Parcel was Richard Sachse, who purchased the property from the Howards in 1973. Consistent with the testimony of his predecessors, Sachse testified that the railroad crossing was the only means of access to the property.

Walter Muehlfelder purchased the Wehde Parcel from various members of the Graham family in December 1958. He described the parcel as approximately 20 acres, 13 of which were wooded highlands. At the time of purchase, there was a path running from the crossing along the eastern border of the Trust Parcel and ending on his property. Muehlfelder stated that he understood that the crossing and the path were the sole means of access to the property because the south and west borders of the parcel were swamplands and there was no right of access through any of the privately owned property directly east. The record reflects that in January 1959 Catherine Graham conveyed a strip of land 1,100 feet long by 20 feet wide along the eastern edge of the Trust Parcel to the Muehlfelders. Muehlfelder testified that his family and their guests used the crossing and strip for ingress and egress during their entire period of ownership. They utilized the parcel for hunting and target shooting and allowed the Boy Scouts to use the property for camping.

Steven and Christin Wehde purchased the southern parcel and the 20-foot strip from the Muehlfelders in 1985. Christin Wehde testified that, at the time of her purchase, the crossing area consisted of gravel and stone between the tracks accompanied by a one-lane gravel

road on each side of the railroad tracks which was suitable only for large-tired vehicles. It was her understanding that the means of access to their parcel was across the railroad tracks and the 20-foot strip. Both Steven and Christin Wehde testified that they improved the crossing by inserting gravel between the tracks, bolting timbers on each side of the rail, placing gravel on the grade, and clearing the road on the 20-foot strip. The Wehdes utilized the subject crossing and the 20-foot strip for access to their property on a daily basis. They further testified that this crossing was removed by Metra in 1988.

Finally, the plaintiffs presented the testimony of Gary Lobdell, a photogrammetrist for the Sidwell Company for 12 years who was previously employed at Chicago Aerial Survey, Inc. As part of his employment, he examines aerial photographs and makes measurements from these photographs. Lobdell was not permitted to give expert testimony. He did, however, identify aerial photographs of the subject properties dated 1958, 1964, and 1970. Lobdell testified that the photographs depicted the subject crossing and a roadway coming off Ingleside Avenue in a southwesterly direction toward the north side of the railroad tracks and continuing on the south side of the railroad right-of-way. Lobdell also identified a topographical survey of the subject properties dated 1978, which did not indicate the existence of the crossing.

■ Neither party presented evidence indicating the origin of the crossing. Instead, the uncontroverted affidavits, testimony and exhibits of the plaintiffs establish the existence of the crossing as early as 1939. Further, the owners of the Trust Parcel (the Bleekers (1954-1966), the Howards (1966-1973), and Richard Sachse (1973-present)) all testified that they utilized the crossing without permission as the sole means of access to their property during their entire period of ownership. Likewise, the owners of the Wehde Parcel (the Muehlfelders (1958-1985) and the Wehdes (1985-present)) testified that they used the crossing and the 20-foot strip without permission as the sole means of access to their parcel until it was torn out by Metra. In the absence of any counteraffidavits or other evidence filed by Metra rebutting plaintiffs' claim of a prescriptive easement, we find the undisputed evidence indicates that use of the land by owners of both the Wehde Parcel and the Trust Parcel was hostile or adverse, open, exclusive, and under a claim of right.

Besides the requirement that the use be adverse, the doctrine of prescription also requires that the use be continuous and uninterrupted. For a use to be continuous, it is critical that there be no break in the attitude of mind of the claimant or the claimant's predecessor

which would amount to a recognition of subordination to the servient owner's consent or an abandonment of the use in response to the servient owner's demand. (*Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 1052.) In order for a use to be uninterrupted, there must be no acts by the servient owner which succeed in causing a discontinuance of the use. When a discontinuance by the servient owner is effected, the running of the statutory period is stopped. (*Roller*, 16 Ill. App. 3d at 1053.) However, not every slight or occasional use of the land, even by the owner, will constitute an interruption. It must appear that the claimant of the right-of-way has acquiesced in the interruption in such manner as to make the subsequent use merely permissive. Obstructing the right-of-way will not divest the claimant of its right unless the obstruction is submitted to for such a period of time as to raise a fair presumption of abandonment. *Verh v. Morris* (1951), 410 Ill. 206, 212.

■ The evidence of an interruption was elicited through the testimony of Stewart Hoehne, the fire chief for the Village of Fox Lake, who recalled that late in 1977 the fire department was unable to drive its trucks across the tracks to reach a fire on the Trust Parcel because the crossing was removed. Gary Lobdell also testified that a topographical survey dated 1978 did not indicate the existence of the crossing. However, Richard Sachse, beneficiary of the Trust Parcel, testified that a fire in 1977 burned the cabin on his parcel to the ground. When he investigated the damage approximately one week later, the crossing had been torn out by a bulldozer, even though he recalled its existence approximately 1½ months prior to the fire. Sachse further stated that, shortly after the fire, he attempted to have the crossing reinstalled by talking with personnel at the Milwaukee Road Railroad Company.

■ To defeat Metra's summary judgment motion, the Wehdes were required to show that their claim of a prescriptive easement was supported by some factual basis that would arguably entitle them to a judgment in their favor. (*West*, 145 Ill. 2d at 182.) In support of their claim, plaintiffs presented both affidavits and testimony of the present owners and their predecessors stating their recollection and use of the crossing. Metra contends that the crossing was used with permission, thereby negating the essential element of adversity. However, Metra failed to present any evidence to this effect. Although Metra did present evidence that the crossing was torn down in approximately 1977 in support of its contention that this action stopped the running of the statutory period, the record is devoid of evidence indicating what party tore down the crossing and any reason for such

action. Without more, we cannot conclude that Metra claimed the property in such a way that subsequent use of the crossing was permissive. Accordingly, viewing the pleadings, depositions, and admissions on file, together with the affidavits and evidence admitted as an offer of proof in the light most favorable to the nonmoving Wehdes, we find that a genuine issue of material fact exists concerning the adverse, open, notorious, and continuous use of the crossing by the owners of the Wehde Parcel for the statutory period.

We further find, after considering all of the evidence, passing on the credibility of the witnesses, and drawing reasonable inferences from the testimony presented, that the American National Bank has sustained its burden of proving that use of the crossing by the beneficiaries of the Trust Parcel and their predecessors was hostile or adverse, open and notorious, and uninterrupted for the statutory period. Thus, the American National Bank has sustained its burden of completing its *prima facie* case. Since the record is completely devoid of evidence concerning the origin of the crossing, a rebuttable presumption of adversity has arisen. At this point, Metra should have been required to present evidence rebutting each and every element of plaintiffs' *prima facie* case. Accordingly, we find the judgment of the circuit court was against the manifest weight of the evidence.

## IV

Plaintiffs next contend that the court erred in striking their motion for summary judgment. On October 11, 1991, plaintiffs filed a motion for summary judgment. Metra objected to the motion because it allegedly attached affidavits of witnesses previously undisclosed and Metra had insufficient time to take their depositions before the scheduled trial date. Metra also objected to plaintiffs' motion on the basis that some of the affidavits attached to the motion contradicted allegations made in discovery depositions of the same witnesses. Accordingly, the court ordered plaintiffs' entire motion stricken.

Section 2—1003 of the Code of Civil Procedure requires a party to furnish the names or addresses of *expert* witnesses upon motion by any party. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1003.) The motion must be made "in sufficient time in advance of trial so as to insure a fair and equitable preparation of the case by all parties." Ill. Rev. Stat. 1989, ch. 110, par. 2—1003(c).

Metra specifically objects to the affidavits of Bruce Bleeker, Gary Lobdell, Jack Kiesgan and Elaine Barkoulies as undisclosed. However, the affidavits of Bruce Bleeker and Jack Kiesgan reveal that these persons were not retained to render expert testimony. Thus, section

2—1003 does not require disclosure, even upon motion. Moreover, the record reveals that Elaine Barkoulies was disclosed as early as August 20, 1990, when she mailed a verification to the Wehdes that aerial photographs of the crossing dated 1958 and 1964 were not retouched or otherwise altered. The record further reveals that Gary Lobdell, the remaining witness, was disclosed at the pretrial conference on August 30, 1991. Thus, we find Metra's objection meritless.

Likewise, Metra's objection to the substance of the affidavits of Stuart Hoehne and Klaas Bleeker is equally meritless. Metra contends that the affidavits of Hoehne and Bleeker were improper because their discovery depositions contradicted the substance of their affidavits. However, a witness' affidavit may expand and clarify opinions, estimates, inferences, and uncertain summary statements made in a prior deposition as long as the affidavit does not contradict deliberate testimony relating to concrete facts. (*Schmall v. Village of Addison* (1988), 171 Ill. App. 3d 344, 348.) Bleeker's counteraffidavit expanded and clarified his deposition in that he recalled the crossing at the time he purchased the property because his memory was refreshed by conversations with his son. Similarly, Hoehne recalled the crossing in both his deposition and affidavit. His affidavit merely expanded on the time frames during which he recalled using the crossing and is allowable.

■ Regardless of our ruling that the substance of the affidavits was proper and the disclosure of the witnesses was timely, the court erred in ordering plaintiffs' entire motion stricken. The appropriate relief should have been to strike the affidavits which violated disclosure requirements or which substantively contradicted the affiant's deposition. On this basis alone, the court erred in striking plaintiffs' entire motion for summary judgment.

V

■ Next, plaintiffs contend that the court abused its discretion in barring the expert testimony of Gary Lobdell. Plaintiffs' trial counsel disclosed the name of his proposed expert witness, Robert Bielecki, more than 60 days prior to trial. However, Bielecki was no longer willing to testify in this case because of other commitments. Thereafter, Gary Lobdell was retained as an expert to replace Bielecki. Plaintiffs' counsel informed the court and defense counsel of the new expert the next day, which was the date scheduled for a pretrial conference. At this time, plaintiffs moved for a continuance to allow use of the new expert and remain within the requirements of Supreme Court Rule 220 (134 Ill. 2d R. 220(b)) because only 52 days

remained before the scheduled trial date. The motion was denied. Gary Lobdell did testify at trial, but was foreclosed from rendering expert opinions. Metra contends that plaintiffs failed to make an offer of proof regarding Lobdell's proposed testimony, thereby failing to preserve their objection to his exclusion. However, such an offer is not necessary when the trial judge understands the character of the evidence and the nature of the objection to it. *Lindley v. St. Mary's Hospital* (1980), 85 Ill. App. 3d 559, 566-67.

Supreme Court Rule 220(b)(1) requires disclosure of a witness retained as an expert to render an opinion at trial "either within 90 days after the substance of the expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later." (134 Ill. 2d R. 220(b)(1).) The rule also requires the trial court to set a schedule of dates for disclosure of any experts not previously disclosed. The trial court must choose dates which will ensure that discovery of all experts is completed at least 60 days prior to trial. 134 Ill. 2d R. 220(b)(1).

Some factors courts consider in determining whether an expert should be excluded from testifying include any surprise and prejudice to the opposing party, the nature of the proposed testimony, the timeliness of the objection to the testimony and whether the omission of the witness' name was intentional or inadvertent. (See *Kubian v. Labinsky* (1988), 178 Ill. App. 3d 191.) In this case, the trial court scheduled the final date for disclosure of experts on June 30, 1991, more than 60 days prior to the scheduled trial date of October 21, 1991. Plaintiffs complied with this time limit by disclosing the name of their initial expert, Robert Bielecki. However, Bielecki subsequently refused to testify. Plaintiffs responded to this difficulty by retaining Gary Lobdell as a substitute, promptly informing opposing counsel and the court, and moving for a continuance on August 30, 1991, the date of the first pretrial conference.

It is true that the June 30, 1991, time limit for disclosure of experts set by the trial court on its own motion prior to the first pretrial conference had expired. According to the express terms of Rule 220, however, plaintiffs were required to disclose the identity of any expert witness retained to render an opinion at trial on *the later of* 90 days after the substance of the expert's opinion first becomes known to the party, or his attorney, or at the first pretrial conference. Thus, scheduling the first pretrial conference 52 days prior to trial made it impossible for plaintiffs to comply with this provision and the time limits previously set by the trial court.

It is clear that plaintiffs acted in good faith in retaining a new expert. However, they were foreclosed from eliciting any expert opinions. Thus, Lobdell testified as a lay witness, which carried no weight in this instance. This resulted in substantial prejudice to plaintiffs through no fault of their own. It was within the court's discretion to facilitate a fair trial and grant a very short continuance to allow discovery of this new expert and remain *within* the confines of Supreme Court Rule 220. Moreover, the record fails to indicate that Metra asserted any prejudice of surprise by plaintiffs' proposed use of Lobdell as an expert, other than the fact that the defense wished to take Lobdell's deposition, and only 52 days remained prior to trial, which placed the expert outside the 60-day requirement of Rule 220.

We previously interpreted Rule 220 as follows:

> "The purpose of the rule is to facilitate trial preparation by eliminating last-minute disclosure of expert witnesses. [Citations.] The rule was designed to eliminate this evil by establishing a uniform, but not inflexible, framework regarding the timely revelation of the identity of expert witnesses and the subject matter of their testimony. [Citations.] The rule requires that parties act in good faith to ascertain the identity of expert witnesses they reasonably anticipate using." (*Vallejo v. Mercado* (1991), 220 Ill. App. 3d 1, 7-8.)

This passage emphasizes that the leading purpose of Rule 220 is to promote the goal of discovery. The punitive nature of the rule is secondary to this goal. Consistent with the spirit of Rule 220 and our interpretation in *Vallejo*, we find that the court abused its discretion by failing to grant a continuance to allow Gary Lobdell to give expert testimony and remain within the confines of Rule 220.

## VI

Lastly, plaintiffs contend that their constitutional right to a jury trial was denied when their jury demand was stricken. Plaintiffs commenced the instant case by filing a complaint for an emergency injunction on October 11, 1988. On June 26, 1991, plaintiffs filed a third amended complaint which contained additional counts for damages and a jury demand. Prior to that time, the action was solely one in equity since plaintiffs sought injunctive relief. Pursuant to motion by Metra, the court ordered plaintiffs' jury demand stricken.

A plaintiff desiring a trial by jury must file a demand with the clerk at the time the action is commenced; otherwise the party waives a jury. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1105.) Although plaintiffs seeking equitable relief are not entitled to a trial by jury, they may

petition the court for a jury. Ill. Rev. Stat. 1989, ch. 110, par. 2—1105.

 In this case, plaintiffs amended their complaint with additional counts for damages well after the date of the initial filing and included their first jury demand at this time. According to section 2—1105 of the Code of Civil Procedure, the jury demand must have been filed at the time the action was commenced. In some circumstances, filing an amended complaint adding damage counts to what was previously an equitable cause of action might involve good cause for filing a late jury demand. However, plaintiffs failed to present any explanation or citation to case law for the proposition that filing an amended complaint constitutes good cause for a late filing. In the absence of an attempt to explain the failure to include the matter in the original complaint, we find that the court did not abuse its discretion in striking plaintiffs' jury demand.

## VII

As an affirmative defense, Metra asserts that plaintiffs' right to a prescriptive easement over the subject crossing was terminated by a judgment in a prior proceeding. On September 4, 1987, the United States District Court entered an order in cause 85—C—05969, referred to in such order as "Condemnation Proceedings." The parties to the instant case stipulate that Metra acquired title to a railroad right-of-way, including the crossing at issue, pursuant to the judgment order and accompanying stipulation entered between the Regional Transportation Authority (RTA), CMC Real Estate Corporation, and the Commuter Rail Division of the Regional Transportation Authority (Metra). However, they "do not stipulate to the order's meaning or legal effect." The trial court indicated that "generally the cases suggest that a consent decree is a settlement agreement between the parties and not binding on subsequent courts because it is not a judicial determination." Nevertheless, the trial court failed to rule on this issue. Metra asserts in its affirmative defense that plaintiffs are bound by the settlement agreement/stipulation and have thereby waived the right to claim a prescriptive easement over the subject crossing.

We find the settlement agreement at issue was the equivalent of a consent decree wherein Metra acquired title to the railroad right-of-way by entering into an agreement for compensation and other terms with the RTA and the CMC Real Estate Corporation pursuant to bankruptcy proceedings of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, case No. 77—B—8999. Further support for our finding exists in paragraph 11.9 of the stipulation itself, which

states that the agreement "shall be deemed a contract made under the laws of the State of Illinois and for all purposes shall be governed by, construed, interpreted, and enforced according to the laws of the State of Illinois."

A consent decree is merely a recitation of a settlement agreement between the parties to the litigation. (*Village of Mundelein v. Village of Long Grove* (1991), 219 Ill. App. 3d 853, 862.) It is not a judicial determination of their rights. Accordingly, the law of contracts controls its interpretation. *Flora Bank & Trust v. Czyzewski* (1991), 222 Ill. App. 3d 382, 388.

In this case, Metra asserts that plaintiffs are bound by the settlement agreement because it stated that "all interested parties are before this court and have waived a jury" and contained the following language:

> "[A]side from the exceptions and reservations provided in the Stipulation, all right, title and interests of CMC, Chicago Milwaukee Corporation, and all Unknown Owners in the Acquired Property is hereby vested in the RTA as set forth in the Stipulation[.]"

However, an enforceable contract requires a meeting of the minds or mutual assent by the contracting parties to its terms and conditions. (*Academy Chicago Publishers v. Cheever* (1991), 144 Ill. 2d 24, 30.) Thus, it follows that a contract may be enforced only against the parties who have agreed to its terms. The settlement agreement, which we have deemed a consent judgment to be interpreted as a contract, was entered into between CMC Real Estate Corporation, the RTA, and Metra. Plaintiffs were not parties to this agreement and are not bound by its terms.

 Assuming *arguendo* the settlement agreement was entered as the judgment of the court in condemnation, plaintiffs' right to a prescriptive easement is unaffected. Both Illinois and Federal rules of procedure allow persons interested in such a lawsuit, whose names are unknown, to be made party defendants. (Ill. Rev. Stat. 1989, ch. 110, pars. 7—102, 7—114; Fed. R. Civ. P. 71A(d)(3)(ii).) In both instances, an affidavit or certificate must be filed by the plaintiffs which states that the names of the persons they wish to join are unknown and cannot be ascertained upon diligent inquiry. (Ill. Rev. Stat. 1989, ch. 110, par. 2—413; Fed. R. Civ. P. 71A(d)(3)(ii).) Next, process may issue and publication made against those persons by the name and description so given. Ill. Rev. Stat. 1989, ch. 110, pars. 2—206, 2—413; Fed. R. Civ. P. 71A(d)(3)(ii).

In this case, Metra failed to present any evidence sufficient to establish proper notice to any "unknown owners," including plaintiffs in this case. The record contains the court's order adopting the settlement agreement between the parties but is wholly devoid of any evidence revealing that proper service of process and publication was made against any "unknown owners." For these reasons, we find that Metra failed to present evidence sufficient to establish its affirmative defense that plaintiffs' right to a prescriptive easement was abrogated by the settlement agreement entered in the United States District Court, cause number 85—C—05969.

For the foregoing reasons, we reverse the judgment of the circuit court of Lake County and remand the cause to the trial court for further proceedings in conformance with this opinion.

Reversed and remanded.

INGLIS, P.J., and DUNN, J., concur.