2021 IL App (2d) 200536-U
No. 2-20-0536
Order filed July 8, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CHICAGO TITLE AND TRUST COMPANY, as Successor Trustee to Itasca Bank and Trust Co.., as Trustee under Trust Agreement dated Sept. 20, 1989, and known as Trust No. 10749, | ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | No. 16-MR-801 |
| THE VILLAGE OF BENSENVILLE, | ) ) | Honorable Paul M. Fullerton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice Bridges and Justice Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court erred in granting summary judgment for a municipality on a property owner's claim for damages from the municipality's blocking of access to a railroad right-of-way in which the property owner claimed a prescriptive easement.

¶ 2    Plaintiff, Chicago Title & Trust Company, appeals the trial court's order granting summary judgment to defendant, the Village of Bensenville (the Village). In its complaint, plaintiff, which owned property in the Village, sought damages from the Village for blocking an alleged prescriptive easement across an adjacent parcel of land. We reverse and remand.

¶ 3                                I. BACKGROUND

¶ 4      Plaintiff, as trustee of a trust, sued the Village, seeking (1) a declaration that the beneficial owners of property within the Village established an easement by prescription across a strip of land in the Village and (2) monetary damages for the Village's blocking access to that strip. The trial court granted the Village summary judgment. Plaintiff appeals.

¶ 5      Plaintiff is the legal titleholder of property at 2-4 South Addison Street in Bensenville (the property). The beneficial owners of the trust are Ian and Eva James. The property is immediately south of railroad tracks owned by the Canadian Pacific Railroad Company, doing business as the Soo Line.

¶ 6      The property is improved with a building erected in 1955. A partnership leases the building to Carefree East Day Care Center, Inc. (Carefree), which operates a daycare center there. Ian is the general partner of the partnership and secretary of Carefree. Eva is president of Carefree. The Jameses purchased the daycare business in 1989 and purchased the property in 1992.

¶ 7      The complaint alleged that the only way for vehicles to reach the rear of the building on the property was along a 35-foot-wide, 150-foot-long strip (the strip) contiguous to the north end of the property. At all relevant times, the strip was part of land owned by the Soo Line. Since 1992, the property owners and their customers and vendors had used the strip "continuously, visibly openly, noticeably, notoriously and adversely." The strip was used by the daycare employees for parking, by garbage trucks for access to the dumpster in the building's rear, and by vendors for deliveries. Previous owners had used the strip for deliveries and garbage pickup since at least 1968. At least while plaintiff was using the strip, there was a driveway or apron from the street to the strip. A public sidewalk passed over the driveway.

¶ 8     Plaintiff's building was built to the lot line on the north and south sides. The north wall contains a door that opens directly onto the strip and is used several times daily. Photos in the record show that the area adjacent to the building is covered in gravel. The strip contains some permanent posts and railroad signs.

¶ 9     Sometime before June 2015, the Village obtained approval to establish a " 'Quiet Zone' " along the Soo Line tracks so that trains would not be required to sound their horns while approaching grade crossings within the Village. As part of the approval process, the Village had to restrict crossings of the tracks by vehicles and pedestrians. In June 2015, per the Quiet Zone plan, the Village barricaded the strip to prevent vehicle access.

¶ 10    Plaintiff then sued the Village in a two-count complaint. In its general allegations, plaintiff alleged that it held a prescriptive easement across the strip. Count I sought a declaratory judgment as to the parties' rights and an injunction directing the Village to restore plaintiff's access to the strip. Count II sought damages from the Village for the loss of that access.

¶ 11    The Village filed motions (1) to dismiss the amended complaint per section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619(a) (West 2018)) and (2) for summary judgment. The Village argued, *inter alia*, that the Soo Line was a necessary party and that the federal agency in charge of railways, the Surface Transportation Board, had exclusive jurisdiction. The Village argued that the Soo Line used the strip for staging and maintenance and that the declaration of an easement could impair those operations. The Village further argued that plaintiff had failed to overcome the presumption that its use of the strip was permissive.

¶ 12    The trial court initially denied the motion. The court believed that the Soo Line was a necessary party but declined to dismiss the case at that point. Both parties sought reconsideration. Plaintiff abandoned its count seeking an injunction and proceeded only on the count seeking

damages from the Village. The court granted the Village summary judgment, ruling that a presumption was raised that the use of the strip was permissive and that plaintiff had not rebutted that presumption. The court cited "the well-settled rule that use of vacant and unoccupied land is presumed to be permissive and not adverse" (*Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 55). The court recognized that "the Illinois view concerning the presumption of adverse use is limited in that it only arises where all the other elements necessary for an easement by prescription are established and where the origin of the use is *not* in vacant and unenclosed land." (Emphasis added.) *Roller v. Logan Landfill, Inc.,* 16 Ill. App. 3d 1046, 1052 (1974). The court found that the presumption of permissive use applied because "[t]he record indicates that [the strip] was vacant, unenclosed, and unoccupied land used for many years by [p]laintiff for parking." Plaintiff "failed to put forth any evidence rebutting the presumption of permissive use." The court concluded that plaintiff's use of the "vacant and unoccupied" strip was "merely permissive," and therefore the Village was entitled to judgment as a matter of law.

¶ 13    Plaintiff timely appeals.

¶ 14                                    II. ANALYSIS

¶ 15    Plaintiff contends that the trial court applied the wrong presumption. It argues that the use of another's property is generally presumed to be adverse. Only if the property is "vacant and unused" do courts presume that the use was permissive. Plaintiff further contends that the property, located in the Village's business district and actively used by the Soo Line, was neither "vacant" nor "unused."

¶ 16    The Village responds that the strip was indeed vacant because it contained no structures and the railroad was not actively using it. The Village also raises several alternative reasons for affirming the judgment: (1) plaintiff's use of the property was not exclusive in that it derived solely

from its lessee's (Carefree's) use of the strip, (2) plaintiff continues to have access to the property from Addison Street, and (3) the Soo Line is a necessary party.

¶ 17    Plaintiff appeals the grant of summary judgment to defendant.  Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2018).  In deciding this, the court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent.  *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).  The movant bears the burden of proof and the initial burden of production.  *Colburn v. Mario Tricoci Hair Salon & Day Spas, Inc.*, 2012 IL App (2d) 110624, ¶ 33.  We review *de novo* an order granting summary judgment.  *Id.* ¶ 32.

¶ 18    An easement is a right or privilege in the real estate of another, but it is by definition a nonpossessory interest.  *Pobuda*, 2014 IL 116717, ¶ 28.  Where there has been privity between users, periods of use may be tacked together.  *Id.*  To establish an easement by prescription, the use of the parcel in question must have been adverse, uninterrupted, exclusive, continuous, and under a claim of right for at least 20 years.  *Id.*

¶ 19    To satisfy the element of adversity, " '[t]he use must have been enjoyed under such circumstances as will indicate that it has been claimed as a right, and has not been regarded by the parties merely as a privilege or license, revocable at the pleasure of the owners of the soil.' "  *Id.* ¶ 43 (quoting *Rose v. City of Farmington*, 196 Ill. 226, 229 (1902)).  "Mere permission to use land cannot ripen into a prescriptive right, no matter how long the permissive use is enjoyed."  *Id.*

¶ 20    The supreme court has set out the criteria for establishing a presumption of a right or grant based on the long acquiescence of the party upon whose land the way is located:

"[W]here the way has been used openly, uninterruptedly, continuously and exclusively for more than a period of twenty years, the origin of the way not being shown, and, parenthetically, where the land in origin is not vacant, open and unenclosed, there is a presumption of a right from the long acquiescence of the holder of record title." *Poulos v. F.H. Hill Co.*, 401 Ill. 204, 214-15 (1948) (citing *Rush v. Collins*, 366 Ill. 307, 315 (1937)).

¶ 21    Thus, where the origin of the use is not shown—and "the land in origin is not vacant, open and unenclosed"—we presume that the use grew out of a grant or adverse right. Here, as we explain, the origin of the use was not shown and a presumption was raised that plaintiff's use of the strip was by right based on the Soo Line's long acquiescence.

¶ 22    As noted, the trial court relied on *Roller* for the proposition that "the Illinois view concerning the presumption of adverse use is limited in that it only arises where all the other elements necessary for an easement by prescription are established and where the origin of the use is not in vacant and unenclosed land." *Roller*, 16 Ill. App. 3d at 1052. The court found that the presumption of *permissive* use applied because "[t]he record indicates that [the strip] was vacant, unenclosed, and unoccupied land used for many years by [p]laintiff for parking."

¶ 23    The trial court did not explain its finding that the parcel was "vacant, unenclosed, and unoccupied." Under *Pobuda* and *Rush*, the general presumption where the origin of the way is unknown is that the use is adverse. The presumption of permissive use where the land is "vacant and unenclosed" appears to be a rather narrow exception. The cases do not clearly explain the rationale for the presumption of permissive use for vacant land, but it appears to be based on the concept of notice to the servient owner.

¶ 24    The rationale for the general presumption of adverse use is that the servient owner has acquiesced in the third party's use of the property. *Rush*, 366 Ill. at 315. Acquiescence, in turn,

requires knowledge of the ongoing use. Thus, where the servient owner is making use of the property, it is reasonable to presume that he is aware of the third party's use of it. Conversely, where the servient owner is not using the property himself, he may not even be aware that anyone else is using it. See *Schultz v. Kant*, 148 Ill. App. 3d 565, 570 (1986) (evidence proved that defendant must have been aware of plaintiffs' use of the contested parcel).

¶ 25     The earliest case that we found that recognizes this distinction is *O'Connell v. Chicago Terminal Transfer Railway Co.*, 184 Ill. 308 (1900), which involved the alleged creation of a public highway by prescription. The court there stated:

> " 'In order to establish a public highway by prescription over unenclosed lands, there must be something more than mere travel over it by the public. It must appear that the user is under a claim of right in the public, and not by mere acquiescence on the part of the owner. Express notice is not necessary, but there must be such conduct on the part of the public authorities as to reasonably inform the owner that the highway is used under a claim of right.' " *Id.* at 316-17 (quoting *Town of Brushy Mound v. McClintock*, 150 Ill. 2d 129, 133-34 (1894)).

¶ 26     *Smith v. Mervis*, 38 Ill. App. 3d 731 (1976), like here, involved a prescriptive easement over a railroad right-of-way. The court, observing that "notice is essential to a finding of adversity," held that the railroad had presumptive notice of the adverse use. *Id.* at 733. The court noted that train crewman and section hands had actual knowledge that the plaintiff was using the land, but, in any event, "the railroad *** received more than sufficient constructive notice by reason of the long, obvious, continuous use of the lane and the improvements made thereon, quite apart from any actual notice it may or may not have received through the crewmen." *Id.* In *Wehde*

*v. Regional Transportation Authority*, 237 Ill. App. 3d 664, 678-80 (1992), we applied the general presumption of adverse use to a claimed easement over a railroad right-of-way.

¶ 27    In *Poulos,* the court held that the mere fact that land is unfenced does not raise a presumption of permissive use.  Rather, for that presumption to arise, "the property in question must comply with all three requirements," which means that "the land not only must be unenclosed, but also must be vacant and unoccupied."  *Poulos*, 401 Ill. at 215.  In *Poulos*, there was no presumption of permissive use, as the properties in question were adjacent to each other in a metropolitan area, and it would be unreasonable to require "persons to fence property even after they had improved that property with dwellings or buildings."  *Id.* at 216.  In *Schultz*, we held that the land in question was not vacant where the defendant and his predecessors had planted and harvested crops on the land for many years.  *Schultz*, 148 Ill. App. 3d at 572.

¶ 28    Here, there was no evidence about the origin of the use of the strip.  Ian testified at his deposition that the previous owners of the daycare center used the strip for parking and access to the rear of the building.  He never discussed the issue with anyone.

¶ 29    The parcel is in the Village's business district.  It is apparent from the record that the railroad right-of-way, of which the strip was part, was in active use.  As in *Smith*, the Soo Line had "more than sufficient constructive notice by reason of the long, obvious, continuous use of the lane."  *Smith*, 38 Ill. App. 3d at 733.  There was simply no evidence in the record to support the conclusion that the strip was vacant.

¶ 30    The Village, however, insists that the strip was vacant because of plaintiff's use:

"To the extent that two objects cannot occupy the same space in our universe, plaintiff's tenant's use of the servient property obviates the railroad's occupancy of the same space over the same time. As to the Soo Line, its property was vacant."

The Village cites no evidence that plaintiff's use of the strip for employee parking and garbage collection completely divested the railroad of use of the strip. In any event, it is apparent from the cases that "vacant" refers to the use of the servient parcel as a whole, not merely the portion subject to the alleged easement. For instance, *Poulos* involved an alleged prescriptive easement for a fire escape. The court noted that the properties in question were adjacent to each other in a metropolitan area. Further, each parcel was improved with multistory buildings even though the area directly under the fire escape was empty. *Poulos*, 401 Ill. 2d at 215-16.

¶ 31 The Village also contends that plaintiff's use of the claimed easement was not exclusive. It argues that plaintiff's right to the easement depended upon the use by the lessee, Carefree. Exclusivity in this context does not mean that the party claiming the easement uses it to the exclusion of everyone else; it means only that his or her right to do so does not depend upon a like right in others. *Pobuda*, 2014 IL 116717, ¶ 28. "Where there has been privity between users, periods of use may be tacked together to satisfy the requisite prescription period." *Id.* ¶ 27. A lease creates privity of contract and estate between the lessor and the lessee. *Nassau Terrace Condominium Ass'n v. Silverstein,* 182 Ill. App. 3d 221, 225 (1989). While this case does not involve a horizontal "tacking" of periods of use, it is undisputed that plaintiff and its lessee were in contractual privity. Plaintiff's use did not depend upon the rights of third parties or the public generally.

¶ 32 *Drew v. Whittington*, 158 Ill. App. 3d 387 (1987), which the Village cites, is distinguishable. There, the claimant's right to the easement depended upon the conduct of the *servient owner*'s lessees, with whom the claimant lacked contractual privity. *Id.* at 392-93.

¶ 33 The Village next contends that plaintiff's use of the public sidewalk that passed over the driveway was permissive because the sidewalk was available for use by the public generally. The

Village notes that a prescriptive easement cannot exist over governmental property held for public use. See *People ex rel. Kenney v. City of Goreville*, 154 Ill. App. 3d 1091, 1098 (1987) (discussing adverse possession against government property). We agree with plaintiff that this issue is a red herring. Plaintiff is not claiming an easement across the public sidewalk, nor, for that matter, is it asking that the barricades be removed. It now seeks only monetary damages for the loss of access to its alleged easement across the railroad property.

¶ 34 To that end, the Village renews its contention that the railroad is a necessary party. The Village maintains that the declaration of an easement across the Soo Line's property might affect its ability to access the property for maintenance functions or its ability to sell the property in the future. A necessary party is one whose presence in a suit is required for any one of three reasons: (1) to protect an interest that the absent party has in the subject matter of the controversy that would be materially affected by a judgment entered in its absence; (2) to reach a decision that will protect the interests of those who are before the court; or (3) to enable the court to decide the controversy completely. *PACE v. Regional Transportation Authority*, 346 Ill. App. 3d 125, 145 (2003).

¶ 35 As noted, plaintiff is not seeking the declaration of an easement across the Soo Line's property. It currently seeks only damages from the Village for the loss of whatever rights plaintiff formerly had. Thus, whether the Village must pay plaintiff damages will not affect the Soo Line's operations or its right to sell the property in the future.

¶ 36 The Village lastly contends that plaintiff continues to have access to its property through the front entrance on Addison Street. The Village apparently confuses a prescriptive easement with an easement by necessity. An easement by necessity is typically implied where an owner of land conveys an inner portion thereof that is surrounded by lands owned by either the grantor or others. *Gacki v. Bartels*, 369 Ill. App. 3d 284, 290 (2006). In such a case, where alternatives exist

that afford reasonable means of ingress and egress, easements by implication should not be granted. *Id.* An easement by prescription, however, has no such requirement because the easement derives solely from prior use. Plaintiff's alternative access to the building may affect the damages to which it is entitled if it ultimately prevails, but it does not prohibit a finding that it had a prescriptive easement over the strip.

¶ 37                                    III. CONCLUSION

¶ 38     The judgment of the circuit court of Du Page County is reversed and the cause is remanded.

¶ 39     Reversed and remanded.